## MECHANICAL CONST. CO. v. LOCOMOTIVE STOKER CO.

(District Court, W. D. Pennsylvania. July 5, 1921.)

No. 323.

1. **Patents ⟨⚭⟩328—979,849, claims 9 to 12, for distributing plate for automatic stoker, held valid.**

The Hanna patent, No. 979,849, claims 9 to 12, for an automatic stoker, the subject-matter of which was a distributing plate containing channels for spreading the fuel over the grate area with uniformity, *held* to disclose a construction which accomplished the purpose desired and by which a new and useful result was obtained so as to be valid.

2. Patents ☞168(2)—Claims cannot be construed as broad as those which were cancelled.

> The claims in the patent as issued cannot be construed to be as broad as those which were canceled after rejection by the patent office.

3. Patents ☞328—979,849, claims 9 to 12, for automatic stoker, held infringed.

> The Hanna patent, No. 979,849, claims 9 to 12, for an automatic stoker, the essential element of which was a distributing plate having an unobstructed central portion and divergent channels, held infringed.

4. Patents ☞328—1,130,443, claims 1 to 3 and 9, for automatic stoker, held not infringed.

> The Street patent, No. 1,130,443, claims 1 to 3 and 9, for an automatic stoker, one element of which was means for delivering the fuel above the firing door, held not infringed by an automatic stoker in which the fuel was delivered through the firing door if those claims are given the limited construction necessary to avoid the prior art.

In Equity. Suit for infringement of patent by the Mechanical Construction Company against the Locomotive Stoker Company, in which defendant by way of counterclaim alleged infringement of a patent by plaintiff. Bill dismissed as to one of plaintiff's patents, decree rendered for plaintiff as to the other patent, and counterclaim dismissed.

Walter F. Murray, of Cincinnati, Ohio, and W. G. Doolittle, of Pittsburgh, Pa., for plaintiff.

Gillson & Gillson, of Chicago, Ill., and Paul Synnestvedt, of Philadephia, Pa., for defendant.

THOMSON, District Judge. The Mechanical Construction Company, a corporation of the state of Ohio, brings this suit against the Locomotive Stoker Company, for infringement of letters patent No. 979,849 for an improvement in an automatic stoker, issued to the plaintiff on December 27, 1910, on an application filed by William T. Hanna. The defendant denies infringement, alleges the invalidity of the patent, and by way of counterclaim alleges infringement by the plaintiff of letters patent No. 1,130,443, issued to the defendant on March 2, 1915, as assignee of Clement F. Street. Plaintiff in reply, denying validity of the Street patent or infringement thereof, prays that the counterclaim be dismissed. Plaintiff's bill was also based on letters patent No. 1,002,513. At the opening of the trial plaintiff's counsel stated that this patent was withdrawn. Defendant's counsel have filed a motion to dismiss as to this patent, which motion is granted, as will later appear in the decree.

[1] The questions involved in the Hanna patent, No. 979,849, are the validity of claims 9, 10, 11, and 12, and their infringement by defendant through its use of the device embodied in Plaintiff's Exhibit 3 and Defendant's Exhibit D. The subject-matter of these claims is a distributing plate for spreading over the grate area with uniformity the fuel which is forcibly injected by steam pressure into the fire box. The immediate problem which Hanna sought to solve was the co-operation of a distributing plate with a steam blast in separating from a moving stream of coal an amount sufficient to keep the rear corners

and back sheets of the furnace supplied, and permitting the steam blast to carry a sufficient quantity forward to the sides, and forward ends of the fire box, so that uniformity of distribution will result. Such uniformity is necessary for efficient firing. Hanna accomplished this by the use of a comparatively flat plate, which has in its face divergent channels discharging at opposite sides of the plate, the channels gradually deepening to the discharge end, and turning at the ends at substantially right angles to the longitudinal axis of the base. The deepening of the channels prevents their being clogged or choked with fuel, and their turning at right angles near the discharge end is to insure deflection of the coal to the rear corners. The testimony has satisfied me that this distributor plate as constructed by Hanna is efficient to accomplish the purpose desired. Tests were made by Mr. Fowler on December 4 and 6, 1920, over a run of 102 miles on the Norfolk & Western Railroad, from Roanoke, Va., to Bluefield, W. Va. The train crews and the coal used were the same in each test. An accurate, tabulated account of each trip showing the speed of the engine, pressure of the steam, amount of coal thrown into the fire box by the fireman, the points to which it was thrown, and the times of stopping and starting the engine were kept by Mr. Fowler. The tests showed that on the first trip, with the channels of the distributing plate in their normal condition, the stoker maintained a comparatively even fire through the whole run, no coal being thrown into the fire box by hand, and the fire being hooked by the fireman only a few times. On the second trip the channels on the distributing plate were filled to the level of the surface of the plate, with the result that the fireman hooked the fire 39 times, threw 16 shovelfuls of coal into the back corners, the engine died three times, and the poor distribution of the coal was plainly manifested in the average steam pressure, in the running time, in the difficulty of maintaining steam, and the times of total failure of power. Nor do I think that the value and efficacy of the channels is minimized by the fact that wings are used in the spreading of the coal over the distributing plate. The device illustrated in the patent are wings or guides which are not moved automatically, but may be set to direct the fuel to a selected part of the furnace in order to counteract the presence of clinkers, or otherwise aid in obtaining a uniform fire; while in plaintiff's commercial device the wings move continuously to secure an even distribution of fuel over the distributing plate. But the tests show that the channels are an efficient means by which uniformity of distribution over the grate area is obtained. I do not find anticipation by the defendant. A separate discussion of these several patents is not necessary. Mr. Carter, defendant's expert, in discussing these patents, gave as his opinion that the one most nearly resembling the distributor plate in the Hanna patent is the English patent to Cotton. Defendant's Exhibit Q is a model of the distributing plate of that patent. It appears that the plate is flat, and the action of the fuel over it would be similar to the Hanna plate with the channels filled in. From the location of the plate with reference to the wall, it is evident that the problem of throwing the coal to the rear corners was neither solved nor attempted

by Cotton. While distribution plates were old in the art, plaintiff's device was not merely a change of form, the work of a constructor. The plaintiff's plate, co-operating with a steam blast, resulted in depositing coal in the rear corners and along the rear wall of the furnace, without obstructing the uniform distribution to other parts of the furnace. This was a new mode of operation by which a new and useful result was obtained, and this is invention.

Does the defendant infringe? In the stoker of the defendant, constructed under the Street patent, a distributing mechanism comprising three separate distributors was used, two being located on opposite sides of the central line of the furnace to distribute coal over all parts of the furnace except along the rear wall. This latter function was performed by a central deflector. With this operation, there was a fuel separator by which the fine fuel was passed to the central deflector, and the coarse fuel to the side distributors. With this construction, defendant experimented with a flat plate having a central hollow stud, with radial steam outlets. This method was abandoned. Plaintiff's Exhibit No. 3 is admitted to be one of defendant's distributors as used in its Duplex stoker. In the Hanna type the fuel is introduced through the furnace door, while the defendant feeds through a plurality of openings. The tubular parts of defendant's distributor has sleeves, which pass through round holes in the back head of the boiler. In Hanna there is a rearwardly projecting flat extension, engaging a dovetailed way in the bottom of the furnace door frame.

FIG. 1 HANNA

Fig.2 DUPLEX

In the preceding cuts, Fig. 1 is a plan view of the plaintiff's distributing plate. Fig. 2 is a horizontal sectional view, showing the bottom plate of defendant's Duplex distributor in plan view. The reference numerals $B$-$B$ are divergent channels below the central portion. In each the central portion is wide and unobstructed.

Fig.3

In the preceding cuts Figs. 3 and 4 are perspective views of the modified form of distributor, which defendant has used from a time shortly prior to the filing of the bill. I am satisfied that the functions performed by the channels are the same in each. In each the channels divert a sufficient amount of coal from the forwardly impelled stream of fuel to suply the rear corners of the back well of the furnace; while the remainder is projected forwardly to the other parts of the furnace. Mr. Fowler's tests showed that when the channels of defendant's distributors were filled the results like those in the Hanna tests were most unsatisfactory.

The form of defendant's distributor, Plaintiff's Exhibit No. 3, and the functions performed are substantially the same as the plaintiff's.

The difference between defendant's distributor, as illustrated in Plaintiff's Exhibit 3 and Defendant's Exhibit D, is that the latter has upon the forward edge of the channels a vertical ridge about one-quarter of an inch in height. The testimony shows that the difference between these two distributors is only one of degree. They have substantially the same construction and the same operation. The change does not operate to escape infringement.

The claims in suit are as follows:

"(9) A distributing plate for blast feed stokers having a wide unobstructed central portion, and a comparatively narrow divergent channel at each side below the central portion of the plate and discharging at the side of the plate.

"(10) A distributing plate for blast feed stokers having an unobstructed central portion and divergent side channels lying below the central portion of the plate and gradually deepening from the receiving to the discharge end, substantially as specified.

"(11) A distributing plate for blast feed stokers having an unobstructed central portion and divergent side channels lying below the central portion of the plate and turned at their outer ends to a direction approximately at right angles to the longitudinal axis of the plate, substantially as specified.

"(12) A distributing plate for blast feed stokers having an unobstructed central portion and divergent side channels lying below the central portion of the plate, gradually deepening from the receiving to the discharge end and turned at their outer ends to a direction approximately at right angles to the longitudinal axis of the plate, substantially as specified."

[2] The scope of these claims must be limited by the prior art, the specifications and drawings, and the record made in the Patent Office in securing their allowance. Certain claims as originally filed were canceled, and the present claims substituted. The construction of these cannot be as broad as the claims canceled. Claim 9, which was canceled, reads as follows:

"(9) A distributing plate for blast feed stokers having an unobstructed central portion lying below the central portion of the plate, substantially as specified."

[3] The words "unobstructed central portion" might mean unobstructed spaces, as between the ridges or obstructions on the Ayres and Ranger patent upon which claim 9 was rejected. I think that the limitation that the central portion is "wide and unobstructed" in claim 9 does not differentiate the claim from the defendant's distributor, in which the central portion is made wide as the plate, in order that coal which passes over the channels meets no obstruction on the plate upon its passage to the forward part of the furnace. Another change in claim 9 over the canceled claim is that the divergent channels are described as "comparatively narrow," and as "discharging at the side of the plate." In the specification the words "comparatively narrow" do not occur, and their meaning is not defined, but may be determined by reference to the drawings. In Fig. 7 the channels, c-4, are wider than the rear edge of the central portion, C, while the forward edge of the central portion, C, is practically twice as wide as the channels. The words of dimension in claim 9 must refer, therefore, to the comparative dimensions of the width of the channel and the forward edge of the central portion, C. In defendant's distributors this forward edge of the central portion is perhaps more than twice as wide as its channel. I think, therefore, that the language "comparatively narrow" applies to the channels in the distributors of the defendant. This is in harmony with the purpose of the channels, which is to divert only a small portion of the coal into the rear corners, the evidence showing that only from 10 to 20 per cent. of the fuel is so diverted. I find nothing in the patents cited by the examiner which discloses a distributor plate having a central unobstructed portion and divergent side channels, discharging at the sides of the plate. He may therefore properly claim such a construction in his present claim 9 as would cover defendant's distributor.

Claim 10 differs from the rejected claim 9, as the channels are described as "gradually deepening from the receiving to the discharge end." These words apply directly to defendant's structure.

Claim 11 differs from the rejected claim 9 in that the side channels are described as "turned at their outer ends to a direction approximately at right angles to the longitudinal axis of the plate." This is descriptive of the defendant's distributors.

Claim 12 differs from the rejected claim in that the channels are described as "gradually deepening toward the discharge end" and being "turned at right angles." Both these features are present in defendant's distributors.

The claims in suit I find valid and infringed.

274 F.—27

Counterclaim.

Defendant's counterclaim involves the question of validity and infringement of claims 1, 2, 3, and 9 of patent No. 1,130,443, issued March 2, 1915, to Clement F. Street for a mechanical stoker for feeding lump fuel to steam boiler fire boxes. The Mechanical Construction Company denies infringement and alleges the invalidity of the claims of Street, by reason of the prior art. It is conceded that some, but not all, of the mechanisms incorporated in the claims had been employed before in locomotive stokers, but it is claimed that these elements had not been combined or correlated as in the Street stoker; that elevators had been used, but they had not extended through the cab floor; that transfer conduits had been employed, but there had been no delivery to a receptacle below the cab floor; that there was nothing analogous to the Street receptacle, unless it be that of Richards', which was placed, not under the cab floor, but upon the floor of the tender, and into which the fuel was shoveled by hand.

Locomotive stokers were not new when Street entered the field. Three inventors, Richards, Lowe, and Crosby, had run an elevator from the floor of the tender over the cab floor to the firing door. Brewster had elevated the fuel in the tender and carried it forward overhead, and spouted it into a hopper attached to the back head of the boiler, while Prescott had an underfeed stoker transferring the fuel under the cab floor to the opening under the grate. In Hanna's earlier form of stoker (1907) there was a fuel receptacle positioned in a slot, cut into the deck of the fire floor, into which the fireman shoveled the coal, and from which led an elevator into the firing door, the elevator comprising a spiral conveyor and a casing. Street transfers the fuel to a receptacle under the floor, and elevates it through the floor to the feed opening in the back head.

In each of the four claims under the Street patent an element in the stoker apparatus is "a fuel receptacle below the firing floor." In connection with this receptacle, in claim 1 is "an elevator for carrying the fuel from said receptacle to a point above the level of the fuel bed." Claim 2 differs from this only in that it includes "means below the floor for delivering fuel from the tender into the receptacle." Means below the floor for delivering fuel from the tender into a full receptacle below the floor were old, as shown in the patents of Brewster, Prescott, and Burger & Williams, all of which were prior to Street; while the Richards and the Hanna views of 1907 illustrate elevators located in front instead of at the sides of the firing door. Claims 1 and 2 in question do not contain any language which imports that distinction into them. The distinction between Street and Brewster is that the latter located his receptacle below the firing floor of the tender; the bucket conveyor being mounted upon the tender instead of the locomotive as in Street. In view of this disclosure, the validity of claims 1 and 2 is doubtful. It would appear that the elements of claim 1 differ from Richards only in placing a fuel receptacle below the engine frames; yet we are asked to construe the claim so as to cover plaintiff's construction, in which there is no receptacle below the frames,

but a fuel conduit between the frames and the fire floor, through which there is a continuous feed of fuel. This we cannot do. Such receptacle is a prominent element in the claims of Street; a reservoir in which there is a quantity of coal maintained, and in which the buckets operate, taking only a portion of the surplus fuel there deposited. If the validity of claims 1 and 2 were conceded, the receptacle therein described cannot fairly be considered to cover the fuel conduit of Hanna.

Claims 3 and 9 differ from claims 1 and 2 regarding the point at which the fuel is delivered. This point is designated in claims 1 and 2 as "a point above the level of the fuel bed"; in 3 and 9 as "a point above said door"; in claim 3 "a gravity discharge conduit for delivering fuel from said point into the furnace"; in claim 9 "means for delivering the fuel from the casing above the door into the furnace."

While it is true that some of the claims not in suit speak of the discharge of the fuel into the furnace "independently of the firing door," there is nothing in claims 3 and 9 that indicates the deposit of the fuel through the firing door. On the contrary, the teachings of the patent as disclosed by the specifications indicate strongly that the fuel was not in any case to be delivered through the door opening. In the specifications it is said:

"One of the objects of my invention is to provide improved means for feeding lump fuel of the kind described onto different portions of the grate of any steam boiler, whether that of a locomotive or of a marine boiler or of a stationary boiler; said means being independent of the usual firing door, so that hand firing may be carried on, and the fire be raked when necessary, without interference with the automatic feeding of fuel."

Again, the specifications state:

"At the same time there is no interference with the firing door, 6, so that the fireman can attend to the fire and, if necessary, feed fuel into it by hand, as usual."

[4] In the Hanna stoker the fuel is delivered through the door opening. That practice, as it appears, Hanna adopted in 1907, and has used continuously since then. It also appears to be a practice that had been followed in other locomotive stokers, antedating both Street and Hanna. If the words "a point above said door" be construed to read into the Hanna stoker, they read also in the Crosby, No. 787,100, where the coal is delivered by feeding through the upper end of casing 10, falling thence by gravity to the level of the firing-door opening, and is carried thence through said opening by projector 10. To differentiate the limitation of claims 3 and 9 of Street, namely, "a point above the level of the firing-door opening," from Crosby, it is necessary to read them with the limitation that the point of delivery is one free of the firing-door opening.

If claims 3 and 9 are to be held as valid, I am of opinion that the Hanna stoker does not infringe them. To summarize, I find claims 9, 10, 11, and 12 of the Hanna patent, No. 979,849, valid and infringed.

I find that the bill of complaint should be dismissed as to letters patent No. 1,002,513, and that a decree should be entered that as to such letters patent the plaintiff, and its successors in title, be concluded from urging against the defendant herein any further claims of infringement

of such letters patent by reason of the manufacture, use, or sale of devices of substantially the character it is now manufacturing.

I find that for reasons set forth in this opinion defendant's counterclaim should be dismissed, and that the defendant should pay the costs.

A decree may be drawn accordingly.