## ELVIN MECHANICAL STOKER CO. v. LOCOMOTIVE STOKER CO.

### LOCOMOTIVE STOKER CO. v. ELVIN MECHANICAL STOKER CO.

(Circuit Court of Appeals, Third Circuit. January 3, 1923. Rehearing Denied March 14, 1923.)

#### Nos. 2915, 2916.

1. Patents ⊕328—1,082,419, for a mechanical stoker for locomotives, not infringed.

The Gee patent, No. 1,082,419, for a mechanical stoker for locomotives, is limited to the particular structure disclosed, and, as so limited, *held* not infringed by the stoker of the Elvin patent, No. 1,267,644.

2. Patents ⊕328—1,130,443, for a mechanical stoker for locomotives, not infringed.

The Street patent, No. 1,130,443, for a mechanical stoker for locomotives, *held* not infringed by the stoker of the Elvin patent, No. 1,267,644.

Cross-Appeals from the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Suit in equity by the Locomotive Stoker Company against the Elvin Mechanical Stoker Company. From the decree, both parties appeal. Affirmed in part, and reversed in part.

For opinion below, see 281 Fed. 195.

J. Snowden Bell, Drury W. Cooper and Frederick P. Whitaker, all of New York City, and Clarence A. Williams, of Pittsburgh, Pa., for Elvin Mechanical Stoker Co.

Synnestvedt & Lechner, of Philadelphia, Pa. (Louis K. Gillson, of Chicago, Ill., and Paul Synnestvedt, of Philadelphia, Pa., and George Gray, of Wilmington, Del., of counsel), for Locomotive Stoker Co.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and BODINE, District Judge.

BUFFINGTON, Circuit Judge. In the court below the Locomotive Stoker Company filed a bill against the Elvin Mechanical Stoker

Company, charging it with infringing certain claims of two patents owned by it, viz. claims 1 and 2 of patent No. 1,130,443, granted March 2, 1915; to Street, for a mechanical stoker, and claims 1, 3, 5, 8, 9, and 10 of patent No. 1,082,419, granted December 23, 1913, to Gee, for a stoker. On final hearing the court below, in an opinion reported at 281 Fed. 195, held the defendant did not infringe the Gee patent, whereupon the plaintiff took an appeal. In the same opinion, it found the defendant did infringe the Street patent, whereupon the defendant took an appeal. The two cases were heard together by this court and will be disposed of by this opinion.

The subject involved is the automatic stoking of locomotives, and the decisions illustrative of that art and pertinent to the case in hand will be found in the decision of the court below, reported at 281 Fed. 195, and the case of Mechanical Construction Co. v. Locomotive Stoker Co., in the Western District of Pennsylvania, 274 Fed. 411, affirmed by this court at 277 Fed. 636, in which the Street patent was held not infringed. Reference to these cases will disclose the general literature of the art and save needless repetition in this opinion.

[1] This case, as we have said, concerns automatic stokers for locomotives, a mechanical necessity demanded by the increased call for greater engine power incident to longer trains and heavier tonnage. The effective point in such stokers, and where the problem centered, was in the even and general spread of the coal over the entire surface of the fire box of the engine, and the problem is well stated and accurately located in the specification of the Gee patent, where it is said:

"Locomotive designers have been forced to provide larger boilers with more heating surface and in consequence more grate area. The length of the fire box was first increased until it became almost beyond human endurance for firemen to keep locomotives hot on heavy grades with long trains. An increase in tonnage meant more power from the locomotive and more grate area, a harder forcing of fires and more coal to be handled by the fireman, until at present the size of the grate is such that some mechanical means is necessary to do the work heretofore accomplished only by the strongest and most skilled fireman.

"The first object to be attained with automatic stoking of locomotives is to get the fuel from the fuel supply in the tender to the stoker on the locomotive, while the second object to be attained is the proper distribution of this fuel over the surface of the grate in the locomotive fire box."

A study of the art satisfies us that the major problem was not getting the coal conveyed to the firing floor, for that was a mere mechanical step, common to many industries, and was simply a question of the selection and adaptation of ordinary conveyor agencies; but the crucial one, and the one which called for inventive effort, was the systematic distribution over the bed of the furnace of the already conveyed coal. The claims of the Gee patent here involved concern this major and crucial problem of coal distribution. By means which we need not describe, the coal is conveyed from the tender and landed from the platform of an upright plunger elevator into a slightly inclined horizontal fuel chute, by means of which the coal is projected forward into and distributed over the grate surface. This fuel

chute consists of an inclosed cylindrical shell or barrel, into which is fitted an axially reciprocating head, whose operation and the delivery of the coal is thus described in Gee's specification:

"At the time the fuel is being discharged the sleeve 74 is being oscillated in the manner heretofore described; the discharge end 64 of said sleeve serving to direct the fuel laterally as well as centrally according to the stage of the oscillation of said sleeve. The direction of discharge is further controlled by means of the hood or deflector 75, which may be manipulated at the will of the fireman or the operator. Should it become necessary to concentrate the entire charge of fuel in one place in the fire box, the shaft 85 is unclutched from shaft 95, whereupon sleeve 74 will remain stationary, and the fuel will thereupon be delivered to the point selected, and the automatic action will be resumed as soon as the shafts are connected through the medium of the clutch."

Now, it is quite clear that in this operation the significant and all-important factor is, not the mere mechanical projectal motive force of a plunger piston supplemented by steam, but it is the mechanism by which the coal is properly distributed over the grate surface, for without such proper distributing means the device would not be a stoking device. And this is recognized, for example, in claim 1, the first paragraph of which reads:

"In an apparatus for supplying fuel to a locomotive fire box, in combination with the locomotive fire box and the tender having a gravity discharge passage, *a stoker device including means for forcing the fuel into the fire box.*"

In estimating, therefore, the practical worth of Gee's contribution to the public in the disclosures of his specification, we must measure its patent worth as a whole; that is, as a practical and efficient automatic mechanical stoker, and not from the mere efficiency of his plunger projective apparatus. Measured, therefore, as a stoker, the apparatus seems to have made no place in the art. The Pennsylvania Railroad, which has a shop right to manufacture it, has made but one, and there is no proof that the plaintiff company, which now owns the patent, or the patentee, have ever manufactured any, although the device is some 14 years old; the patent having been applied for in 1908. Such being the fact, we are justified in holding that Gee will receive all the patent protection to which he is entitled by confining his claims to the particular structure he disclosed, and to the mechanical equivalents of its parts, and declining to construe his claims in any broad way to cover other devices whose commercial success in the art lies, not in the fact that they adopted his disclosures, but that they departed from them.

[2] Leaving, until a later part of this opinion, the application of these general views to the defendant's device, we next turn to the patent of Street, No. 1,130,443, claims 1 and 2 of which are alleged to be infringed. The purpose of Street, as disclosed in his specification, was to provide a mechanical stoker which, while mechanically feeding fuel into the fire box, would not do so through the fire door, but leave that opening for use in the old hand shoveling and the bed raking done by the fireman. In that regard the specification says:

"Said means being independent of the usual firing door, so that hand firing may be carried on, and the fire be raked when necessary, without interference with the automatic feeding of fuel."

As Street's purpose was to furnish a mechanical stoker, which would leave the firing door free for the fireman to shovel and rake in the customary way, it was necessary for him to keep the floor of the tender and the engine free from his stoker mechanism. So that we are justified in saying that the preservation of the fire door and the possibilities of unhampered hand feed and care of the fire in the old-time practice was a distinctive feature of Street's device, for it could be urged as a ground for adopting it that if the mechanical stoker becomes disabled, the engine can be fired by hand just as readily as though the mechanical stoker was not on the engine; and that this is a just estimate of Street's device is evidenced by the significant fact that every one of his 14 claims, with the single exception of the second, embody the element of a "boiler furnace *and its firing door,*" a "boiler furnace having *a firing door,*" or a "boiler furnace provided *with a firing door.*"

While thus leaving his coal supply in the tender, where the fireman could have free access to it for feeding through the firing door, Street provided for the presence of a fuel supply of coal under the unlittered firing floor of the engine, at a point where his mechanical stoker could begin to operate and be supplied with fuel. He therefore provided a coal chute running downward from the tender and opening into a coal bin, and through which chute the coal could pass by gravity. In that regard his specification says:

"The chute 7 leads downwardly and forwardly to a fuel receptacle *11,* located below the floor or deck of the cab *1;* the fuel being fed down the chute by gravity."

It will be seen that this simple gravity coal chute feed into the supply coal chamber was a mere incident of supply, and was in no way mechanically or functionally a part of Street's mechanical stoker. We have not overlooked the fact that Street stated that, if the normal gravity feed became impracticable or undesirable, "a screw or bucket conveyor of any suitable known type, operated by a motor, or from an axle of the tender or locomotive, may be provided, instead of the chute." And as evidencing the view that the coal chute, and therefore the coal supply, was a mere incident, that it was no functional part of the stoker, and that the latter began when it got coal, not from the tender, but from the auxiliary coal supply in the receptacle under the engine floor, we note the fact that all of the claims, except the second, are limited to mechanism located on the engine, and not on the tender.

From this it will be seen that the coal receptacle which Street's device used, and which he specified as one of the elements of his claim, was a coal bin or supply chamber from which the stoker gets its supply, and that the means for getting the coal from the tender to this auxiliary chamber had no functional or co-operative relation to the stoker. The latter began its operations by drawing the desired fuel from the coal receptacle with an endless bucket conveyor. As such bucket conveyor simply took its supply from the bin, and the gravity chute replenished the bin as the conveyor drew out the coal, there was, of course, no synchronizing or co-ordinating of the supply

from the chute and the withdrawals by the conveyor. The chute simply kept filling the bin as the conveyor kept emptying it, for a supply of accumulated fuel in excess of that to be withdrawn is absolutely necessary to the working of a bucket conveyor.

Such being the respective disclosures of Gee and Street, and the character of the devices they used for mechanical stokers, we next turn to the stoker built by the defendant, and inquire whether it infringes the claims of either Gee or Street. Such alleged infringing device is made under patent No. 1,267,644, granted May 28, 1918, to A. G. Elvin, A. B. Fahnestock, and F. H. Clark, and the fuel supply part of it is illustrated by the accompanying drawing:

ELVIN STOKER

—in which, as the coal is carried up continuously and delivered by a screw to a properly synchronized plunger elevator, which, as it drops, receives, on its head or platform, the coal, as it is delivered by the screw, and carries it to the delivery floor above. Of course, during the rise of the plunger through its casing with its load of coal, the spiral conveyor continues bringing coal up, and at its head is a space where this interim coal has space way until the return of the plunger; but, in view of the fact that the plunger reciprocates at high speed, it will be seen that there is no such functional accumulation of coal as takes place in Street's chamber or bin in order to enable his bucket conveyor to operate. In the defendant's device, the only source of supply is the tender, and any stoppage of the coal at the head of the screw, before it is delivered to the plunger head, is in no functional sense a storage of coal, but is a mere incident to the return of the

plunger, and the capacity and speed of the plunger and screw are necessarily so co-ordinated that there is no accumulation or storage of coal, but that the plunger, at each stroke, takes care of the oncoming screw product. Finding, therefore, in the defendant's stoker, the functional element of the receptacle of Street's disclosure and claims lacking, we are of opinion the charge of infringement has not been established.

Subjecting the defendant's stoker to the claims in issue of the Gee patent, we agree with the court below that infringement has not been made out. The method of fuel delivery to the surface of the grate, as disclosed by Gee, consists of a stoking head reciprocating within a chute or closed shell and a rotary sleeve at the forward end of the chute, provided with a pivotally adjustable hood or deflector, which directs and distributes the fuel over the fire grate. The defendant has none of these agencies, but its machine in effect consists in mechanically making use, in duplicate, of the old manual system of hand shoveling through the fire door and imparting to the fuel such a sidewise swing that it is distributed over the entire grate surface. This is done by a pair of alternately worked swing shovels, the rear end of the back of each shovel being provided with a semicircular wall. As the moving shovel sweeps around and forward, the shovel body cuts under the fuel and gathers up the coal from the fire floor, and the shovel back prevents it from escaping. As the shovel swings around, the coal is discharged over the entire grate surface. We agree entirely with the court below when it summed up the defendant's delivery device in these apt words:

"The shovels are not pushers as in the stoking head of Gee, but, on the contrary, are vehicles upon which the fuel is carried. They deliver the coal to the fire box in a manner peculiar to themselves. In mode of operation they are strikingly similar to a shovel in the hands of a fireman."

The action of the court, in finding the Gee patent was not infringed, is affirmed. The cause will therefore be remanded to the court below, with directions to amend its decree, so as to dismiss the bill as to both the Street and Gee patents for noninfringement; the costs in the lower court to be borne by the plaintiff, and the costs of the appeals to this court to be divided equally between the plaintiff and defendant.