## BORST v. SIMPLEX EJECTOR & AERATOR CORPORATION.

### No. 682.

District Court, D. Delaware.

Aug. 10, 1932.

John F. Neary and Merton W. Sage (of Pennie, Davis, Marvin & Edmonds), both of New York City, for plaintiff.

William G. Mahaffy, of Wilmington, Del., and Charles W. Hills, Alexander C. Mabee, and Benjamin H. Sherman, all of Chicago, Ill., for defendant.

NIELDS, District Judge.

This is the usual bill in equity charging Simplex Ejector & Aerator Corporation with infringement of United States letters patent No. 1,396,397 granted to Warren R. Borst, the plaintiff, on November 8, 1921. The invention is alleged by the patentee to be for certain new and useful improvements in sewage treatment. The answer denies infringement, and challenges the validity of the patent.

Claims 1 to 7 are in suit. Claim 1 is typical, and reads: "The method of treating sewage which comprises subjecting a body of sewage to biological action with the aid of aerobic bacteria in the presence of free oxygen, and maintaining the presence of free oxygen throughout the entire body of said sewage by diffusion downwardly through the sewage of air introduced by agitation at or near the top surface of said body of sewage."

The specification states: "Domestic or municipal sewage contains varying amounts of putrescible organic matter which, if not appropriately removed from the sewage before it is discharged into the sea, rivers, or the like, decomposes and thereby becomes an offensive nuisance that may even amount to a danger to public health. * * * It is not only desirable, but in many cases necessary, that such putrescible organic matter be removed from the sewage or otherwise rendered innocuous and inoffensive before the sewage is finally disposed of."

Further: "Various methods have heretofore been proposed for the removal of putrescible organic matter from sewage, such as screening, sedimentation, biological action," etc.

Biological action has proved the only effective treatment. The patentee in his specification states that his invention "is concerned solely with those processes of sewage treatment in which the biological action for clarifying or purifying the sewage is brought about by aerobic bacteria." The biological process of using aerobic bacteria was known in the art as the activated sludge process. Seeding sewage with activated sludge, that is, with slime animated with aerobic bacteria obtained in nature from rocks and beds of streams, was well known. The bacteria of the activated sludge convert the carbon and nitrogen of the putrescible organic matter in the sewage into inorganic matter. The activated sludge converts the whole mass of organic matter into activated sludge. In other words activated sludge seeded in organic matter, if fed with oxygen, converts that matter, by a process of propagation and multiplication of the bacteria, into activated sludge which sinks to the bottom of the sewage and can be discharged into river or sea without menace to health.

For many years Borst, the patentee, has been engaged in general sanitary work for New York City. In 1912 he was placed in charge of a sewage experimental plant. While engaged in experimental work he found that little oxygen was absorbed by sewage when its surface was quiescent, but that the absorption of oxygen increased as the sur-

face of the sewage was agitated. By mechanically agitating the top surface of the sewage, he found that oxygen in considerable amount was introduced into the body of the sewage. In a public library he found an article by Dr. Adeney published in London in 1908 describing re-aeration of fresh and salt water. Borst believed from his experiments and the information obtained from the Adeney article that sufficient oxygen for carrying out the activated sludge process could be introduced into sewage by agitating the top surface of the sewage. Agitation producing waves on the top surface he thought adequate.

The specification recites the results of his experiments: "From my investigations, I have accordingly found that when a body of sewage, in contact at its top surface with atmospheric air, is continuously agitated by any means, the body of liquor absorbs air (and hence oxygen) until it becomes saturated therewith. Under such conditions, the aerobic growths readily develop and become active in consuming the organic matter in the sewage, whereby the liquid becomes stable and the organic matter is converted into a biological growth generally known in the art as activated sludge."

And further: "As a result of the very rapid diffusion downwardly of the oxygen so introduced, there is maintained throughout the entire body of sewage undergoing treatment a uniform distribution of free oxygen in sufficient amount to assure the desired activity of the aerobic bacteria."

The invention relates to a process for supplying oxygen to the aerobic bacteria or activated sludge in sewage. The patentee believed that he had uncovered a scientific principle of the instantaneous downward diffusion of oxygen to any and all depths by extending and constantly changing the top surface of sewage in contact with the air by mechanical agitation. To economically and effectively introduce air at the top surface of the sewage, "it is only necessary," says the patentee, "to appropriately disturb the top surface of the body of sewage in contact with atmospheric air, for example, by the production of waves or by mechanically produced agitation." So much for plaintiff's process.

■ Before dealing with the question of infringement, certain general observations must be made. Defendant questions the validity of the patent by pointing out five specific grounds of inoperativeness. In view of the conclusion hereinafter reached on the question of infringement, it is unnecessary to discuss these grounds except to observe that the elaborate and expensive structure of defendant and of other operative systems would not exist if plaintiff's simple process was sound. Moreover, the process of the patent has never gone into commercial use. The experimental plant at Red Bank, N. J., was constructed along lines quite different from the disclosure of the patent, and never passed beyond the experimental stage. The patent made no impression upon the art. For over ten years it has remained a paper patent. On the other hand, defendant has sold and installed apparatus of the kind complained of in this suit in many cities of the United States for the treatment of approximately ten million gallons of sewage a day. In Lovell v. Seybold Mach. Co. (C. C. A.) 169 F. 288, 290, Judge Coxe said: "But one machine was made under the complainant's 1893 patent, it was never a commercial success and was abandoned. The patent has added nothing of practical value to the art whereas the defendant's machine has been an unquestioned success. * * * It would, however, be grossly unfair to compel the builder of a practical working machine to pay tribute to one who has added nothing of substantial value to the art, simply because the language of his claims is broad enough to include the successful structure." In Elvin Mechanical Stoker Co. v. Locomotive Stoker Co. (C. C. A.) 286 F. 309, 311, Judge Buffington said: "the apparatus seems to have made no place in the art. The Pennsylvania Railroad, which has a shop right to manufacture it, has made but one, and there is no proof that the plaintiff company, which now owns the patent, or the patentee, have ever manufactured any, although the device is some 14 years old; the patent having been applied for in 1908. Such being the fact, we are justified in holding that Gee will receive all the patent protection to which he is entitled by confining his claims to the particular structure he disclosed, and to the mechanical equivalents of its parts, and declining to construe his claims in any broad way to cover other devices whose commercial success in the art lies, not in the fact that they adopted his disclosures, but that they departed from them." See, also, Deering v. Winona Harvester Works, 155 U. S. 286, 295, 15 S. Ct. 118, 39 L. Ed. 153.

The claims must be narrowly construed. Does defendant infringe? This question can

be better understood by comparing Fig. 1 of the patent in suit and a sectional view of defendant's apparatus.

air is introduced into the sewage at its surface and rapidly diffused downwardly therethrough. The apparatus of the patent is

*Fig-1*

PLAINTIFF'S PATENTED STRUCTURE
Deft's Ex. No. 3.

DEFENDANT'S DEVICE
Deft's Ex. No. 2-A.

In the process of the patent raw sewage is introduced into the drum 9 through an inlet pipe at the top thereof. The sewage passes downwardly through the drum and upwardly through the baffled annular space into the peripheral launder 17. The shaft 11 is rotated at sufficiently high speed to produce a vigorous agitation of the sewage within the drum. As a result of this agitation, divided into three parts: First, drum 9, in which aeration is effected by air absorbed or beaten into the sewage by mechanical agitation at the surface of the sewage; second, a quiescent area between drum 9 and the inner wall of the tank 5 divided into separate compartments by radial baffles 16 where sedimentation and decantation take place; and, third, a lower conical portion 6 in which

there is maintained during operation an accumulation of biological sludge to about the level indicated by the dotted line *a*. There can be no circulation of sewage back into the aerating zone after it has passed out through the lower end of drum 9 into the annular sedimentation zone. There is no circulation of sewage below the line *a*.

It is, of course, necessary that activated sludge be brought into intimate contact with the raw sewage. There is no suggestion in the patent that activated sludge is returned to the drum or mixed with the incoming raw sewage. Plaintiff testified that the vigorous agitation within drum 9 forms a vortex and sucks activated sludge up from the accumulation below the line *a* and mixes it with the incoming raw sewage in sufficient quantity to innoculate the raw sewage and carry on the activated sludge process. Yet the patent teaches that the flow of the incoming sewage is downward through the drum 9. The sewage cannot flow in opposite directions within the drum. According to the patentee, "as long as the surface of the sewage in contact with atmospheric air is maintained in a condition capable of absorbing such air, there will be provided, solely by absorption and diffusion, throughout the entire body of sewage undergoing treatment, a sufficient amount of free oxygen for the active and effective development of the aerobic growths." It is clear that the word "diffusion" does not relate to the circulation of the raw sewage, but only to the distribution of the absorbed air or oxygen. This is confirmed by reference to the file wrapper. To avoid a reference cited by the Examiner, the patentee stated: "In the applicant's process diffusion is relied upon to effect the transfer of the air introduced at or near the surface of the body of sewage downwardly throughout the sewage. There is in the applicant's process, no circulation of the sewage, in the sense in which the sewage is circulated in accordance with the Stott and Jones method." Such, briefly, is the apparatus and process of the patent.

Referring to defendant's device, or apparatus, it appears that the aeration tank is provided with sloping bottom walls converging to form a depressed central portion where uptake columns are mounted. These columns are supported on legs to permit the flow of sewage upwardly through the columns. On the top of each column is a saucer-shaped aerating device supported and rotated by a vertical shaft. The saucer is provided with a number of radial blades—one set curved so as to throw outwardly an upper film or spray of sewage, and a second set of blades of different height and curvature for throwing a lower film or spray of sewage. According to defendant's process, raw sewage enters at the top and near the side of the aeration tank. Here it joins a return flow of activated sludge. The mixture flows downwardly to the bottom of the uptake column. The revolution of the aeration device draws up through the column the mixture of sewage and activated sludge. This mixture is thrown out over the surface of the body of sewage in the areation tank in the form of an upper and lower film or spray. The process is operated with an eight-hour detention period. The contents of the tank are circulated through the column and sprayed over the surface of the tank every fifteen minutes. In other words, in a one-column type of equipment the sewage passes up through the column thirty-two times and is exposed to the air in the form of a double film or spray a like number of times. Suction prevents the accumulation of sludge in any part of the aeration tank. The same action which sprays out the sewage also produces the required circulatory motion necessary for the thorough mixing of the activated sludge with the raw sewage. The effluent from the aeration tank comprising the treated sewage and activated sludge flows into a settling tank for deposition of the sludge. A part of this sludge is returned as before described for innoculating the raw sewage as it enters the aeration tank.

It thus appears that the plaintiff and defendant were traveling in different directions. The plaintiff was proceeding along the line of Adeney's work—diffusion of air downwardly through the body of the sewage induced, according to the patent, by mechanical surface agitation and a beating-in action. The defendant followed the teaching of a different school. British patent to Porion, 7383 of 1904, for a process for disinfecting sewage, discloses means for causing a flowing and stirring action and lifting a portion of the liquid into the air and allowing it to drop back into the sewage in the form of drops or spray. Haworth in an article published in London in 1916 describes an experiment in which he introduced air for carrying out the activated sludge process by two rotating paddle wheels. He relied upon positive circulation and not diffusion for the distribution of oxygen throughout the body of the sewage. British patent to Forbes et al., No. 17,475 of 1897, discloses a structure for carrying out a spray and droplet aeration. Stott and Jones United States patent No. 1,343,797

relates to mechanical aeration in the activated sludge process. Aeration is accomplished by stirring or beating the surface layer down into the body of the liquid. There is stirring, mixing, and diffusion. Stott and Jones require the bringing of all particles of the sewage into contact with air "at or near the surface, whether there be actual splashing or like action, or not" and "more or less rapid movement or circulation of the liquid throughout the tank." It is clear defendant's process resembles more closely the process of the Stott and Jones patent than of the patent in suit.

The Stott and Jones patent placed the plaintiff on the horns of a dilemma. To avoid Stott and Jones, Borst disclaimed in the Patent Office the utilization of a mixing or circulatory movement for the distribution of oxygen throughout the body of sewage undergoing treatment, and relied upon "diffusion" to distribute air at the surface of the sewage downwardly throughout the sewage. Borst was entirely right when he said: "There is in the applicant's process, no circulation of the sewage, in the sense in which sewage is circulated in accordance with the Stott and Jones method." This statement distinguishes the process of the patent in suit from that carried out in defendant's equipment. The only similarity between the process of plaintiff and defendant is that air is introduced at or near the top surface of the body of sewage undergoing treatment, and not as theretofore in the form of compressed air introduced into the bottom of the sewage. Oxygen required to effectively carry out defendant's process is absorbed by the sewage while in the form of a spray or film thrown outwardly over and above the top surface of the sewage by the aerating saucer at the top of the column. It is true that the falling droplets from the spray or film will agitate more or less the surface of the sewage and cause an additional absorption of oxygen. That amount is merely incidental. Oxygen taken up by the sprayed sewage is distributed throughout the body of the sewage. For this distribution defendant does not rely upon "diffusion" as does the patentee, but upon a positive circulation of the sewage by the pumping action of the aerators.

I decline to construe plaintiff's claims as covering defendant's device whose commercial success in the art lies, not in the fact that defendant adopted plaintiff's disclosures, but that defendant departed from them.

The bill of complaint must be dismissed.