## LOCOMOTIVE STOKER CO. v. ELVIN MECHANICAL STOKER CO.

(District Court, D. Delaware. May 4, 1922.)

### No. 410.

1. Patents ⊕⇒328—1,082,419, for a mechanical stoker for locomotives, not infringed.

   The Gee patent, No. 1,082,419, for a mechanical stoker for locomotives, *held* not infringed by the stoker of the Elvin patent, No. 1,267,644.

2. Patents ⊕⇒328—1,130,443, for a mechanical stoker for locomotives, claims 1 and 2, infringed.

   The Street patent, No. 1,130,443, for a mechanical stoker for locomotives, *held* valid, and claims 1 and 2 *held* infringed by the stoker of the Elvin patent, No. 1,267,644.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Locomotive Stoker Company against the Elvin Mechanical Stoker Company. Decree for complainant.

Louis K. Gillson, of Chicago, Ill., Paul Synnestvedt, of Philadelphia, Pa., and George Gray, of Wilmington, Del., for plaintiff.

Drury W. Cooper and J. Snowden Bell, both of New York City, and Robert H. Richards, of Wilmington, Del., for defendant.

MORRIS, District Judge. Locomotive Stoker Company charges the Elvin Mechanical Stoker Company with infringement of claims 1 and 2 of its Street patent, No. 1,130,443, and claims 1, 3, 5, 8, 9, and 10 of its Gee patent No. 1,082,419. The suit is upon final hearing. The defenses are invalidity and noninfringement. Both patents relate to improvements in stokers for conveying fuel from tender to locomotive and distributing it over the grate in the locomotive fire box.

[1] Defendant's mechanism is made in substantial conformity to Elvin patent, No. 1,267,644, and comprises a screw conveyer, by which fuel is transferred from the tender to the locomotive; a "pocket," beneath the firing floor of the locomotive, into which the fuel is delivered from the screw conveyer; a reciprocating elevator, which receives the fuel from the pocket and raises it in successive portions into a shovel box; the shovel box, located just beneath the bottom of the fire door of the locomotive, and, within the shovel box, two alternately swinging shovels, by which the fuel is removed from the elevator and projected into the fire box.

The stoker described in the Gee patent consists of a screw conveyer, *47* to transfer the coal from the tender to a hopper *49* beneath the firing deck of the locomotive; an elevating mechanism, comprising a reciprocating head *65* operating within a sleeve *66* to raise the fuel in measured increments from the hopper to a chute *55* leading into the fire box; the chute *55*; a stoking head *62*, reciprocating within the chute, connected by means of a rod with the piston of an engine, to eject the fuel from the chute into the fire box of the locomotive; and, mounted on the forward end of the chute, a rotary sleeve *74* provided with a pivotally supported adjustable hood or deflector *75* for distributing the fuel over the fire grate.

Claim 3 embodies the essential and salient characteristics of each of the Gee claims in suit. It is:

"In an apparatus for supplying fuel to a locomotive fire box, the combination of a tender provided with a discharge passage, a stoking chute, inter-mittently acting discharging means for forcibly expelling separate charges of fuel from the chute over the fire, and a fuel-feeding mechanism arranged below the chute and receiving the fuel from the discharge passage of the tender, said mechanism including means for intermittently introducing separate charges of fuel into the stoking chute in synchronism with the operation of the said discharging means."

The question of infringement turns upon whether the shovel box and shovels of the Elvin stoker are in principle the same as or equivalents for the chute *55* and stoking head *62* of Gee. The chute, as described in the patent, is a slightly inclined tube into which the fuel is brought through a feed opening in the lower side by the reciprocating elevator

plunger. The elevator constitutes the closure for the feed opening while the coal is being projected from the elevator, through the chute, into the fire box by the stoking head. The stoking head is a plunger conforming to the shape of the chute, snugly fitting therein and working in timed relation with the elevating plunger. The shovel box of Elvin is oblong, and of dimensions sufficient to permit the horizontal oscillation of the two shovels placed therein—one on each side of the feed opening through which the fuel is delivered by the elevator. The shovels, in shape somewhat like a scythe, have a blade with an upright back. They are each attached at one end to a vertical shaft, by which they are alternately driven forward and backward in a semicircle. When the elevator arrives with its load, one of the shovels, then positioned so that in its advance it will pass over the top of the elevator, swings forward. The blade, moving in a plane parallel with and just above the bottom of the box, cuts under the fuel on the elevator. The upright back holds the load on the blade, and by the further forward movement of the shovel the coal is carried to and projected into the fire box. By a reverse movement the shovel returns to its starting point. Thereupon the second shovel duplicates the movements of the first. The capacity of each shovel is equal, approximately, to the capacity of the elevator.

The plaintiff contends that the blade of Elvin's shovel serves no purpose, that the upright back of the shovel is in principle the stoking head of Gee, and that the shovel box is a chute. It points out that the bottom of the shovel box is marked and scratched by coal; that in Elvin's earlier stokers the bottom of the shovel box did not extend as far forward as now, and that then coal accumulated on the grate in a pile or bank just inside the fire box; that an Elvin stoker with the shovel blades removed functions as well or even better than with the blades. As I understand the operation of Elvin's shovels the blades serve the distinct and definite purpose of supporting and conveying the coal from elevator to fire box, while the upright backs serve as walls or plates to hold the fuel on the blades during their forward movement. The shovels are not pushers as is the stoking head of Gee, but, on the contrary, are vehicles upon which the fuel is carried. They deliver the coal to the fire box in a manner peculiar to themselves. In mode of operation they are strikingly similar to a shovel in the hands of a fireman, and therein differ, not only from Gee's stoking head, but from all other devices of the prior art. At the hearing plaintiff operated a model of defendant's stoker with a blade of one of the shovels removed. I did not find that demonstration materially helpful in determining Elvin's mode of operation. His mechanism is not so constructed, and, in view of the conclusions hereinbefore stated, which I think clear, comment upon the altered mechanism and its mode of operation seems uncalled for.

Is the shovel box of Elvin a chute, within the meaning of the Gee claims? This depends upon the service it performs and the mode of such performance. The manner in which the mass or bulk of the fuel is transferred from elevator to fire box has heretofore been stated. Some fuel may at times be jarred or thrown from the elevator into

parts of the shovel box by the movements of the locomotive. Some may be scattered as the shovel in its accelerating forward movement comes in contact with the pile of fuel upon the elevator, and some may fall from the shovel during its passage to the fire box. Such fuel is confined by the shovel box. It is again picked up by the shovels or pushed by and ahead of them into the fire box. Necessarily the bottom will be marked and scratched. If the bottom be not sufficiently extended, the shovels will not have the opportunity to pick up again the scattered coal, and it will, of course, accumulate on the grate at the entrance to the fire box. But the shovel box is not a framework or tube upon or through which the fuel is made to *slide* from elevator to fire box, as is Gee's chute. His chute supports, confines, and controls the direction of the fuel during its passage from elevator to fire box, while in Elvin's stoker these functions are performed by the shovels, and not by the shovel box. In Gee the chute is of equal rank and importance with the stoking head. In Elvin the shovel box is merely auxiliary to the shovels. It follows that the Elvin stoker does not, in my opinion, infringe the Gee claims in suit. It therefore becomes unnecessary to consider the validity of those claims.

[2] In the Street stoker the fuel is transferred from tender to a receptacle under the cab of the locomotive by a screw conveyer placed under the floors of tender and cab. The fuel is elevated from the receptacle by an endless chain of buckets and delivered into a hopper near the top of the back head of the boiler. It then passes through distributing tubes to the firing points, where it is blown into the fire box by timed steam jets. The Street claims in suit are:

"1. In a locomotive, the combination with the boiler furnace and its firing door, of a mechanical stoker apparatus mounted on the locomotive and comprising a fuel receptacle below the firing floor, an elevator for conveying the fuel from said receptacle to a point above the level of the fuel bed, and means for delivering the fuel therefrom into the furnace.

"2. In a locomotive and tender, the combination with the boiler furnace, of a mechanical stoker apparatus mounted on the locomotive and comprising a fuel receptacle below the firing floor, means below said floor for delivering fuel from the tender into said receptacle, an elevator for conveying the fuel from said receptacle to a point above the level of the fuel bed, and means for delivering the fuel therefrom into the furnace."

The defendant contends that, in view of the prior art, these claims do not disclose invention. The state of the art at the time of Street's filing date for the patent in suit is set out in Mechanical Construction Co. v. Locomotive Stoker Co. (D. C.) 274 Fed. 411, affirmed (C. C. A.) 277 Fed. 636, and will not be here reviewed. Though Street was not a pioneer, he was the first to make an under the deck transfer of fuel from tender to locomotive for an over the fire feed. His stoker uses the limited space of the cab with economy, leaves the fire door and the approach thereto free and unincumbered, has attained commercial success, and, in consideration of its novelty and utility, a medal has been awarded to its inventor by the Franklin Institute of the state of Pennsylvania. Though Street's advance over the prior art may not be great, it is not lacking in merit or beneficial result, and rises, I think, to the dignity of invention.

The question of infringement depends upon whether in Elvin's stoker the "pocket" between the forward end of the screw conveyer and the elevator is a receptacle, within the meaning of the Street claims. The defendant urges that the reasoning by which the Hanna stoker was differentiated from the Street stoker by the Court of Appeals in Mechanical Construction Co. v. Locomotive Stoker Co., 277 Fed. 640, likewise differentiates the Elvin stoker from that of Street. It was there held that "the receptacle is a distinct element of the Street device," and that "no part of the conveying apparatus itself * * * should be regarded as a receptacle." The question here presented, then, is whether Elvin's pocket is a distinct element of his device, or is only a part of his conveying mechanism. The fuel is delivered to the pocket by a continuously revolving screw conveyer. It is intermittently removed therefrom by a reciprocating elevator or plunger. Though the revolutions of the conveyer are continuous, yet the discharge of the fuel therefrom takes place only as the extreme forward end of the spiral is moving in the lower portion of its orbit. The delivery of fuel to the pocket is therefore intermittent. But the movements of the conveyer and elevator are not synchronized, so as to have the discharges of fuel from the conveyer occur only when the elevator is in a position to receive them. In fact, the conveyer makes more than one revolution during a cycle of elevator movements, with the consequence that fuel accumulates in the pocket while the elevator is delivering one load and returning for the next.

The plaintiff contends, however, that such accumulations are at each revolution of the conveyer moved upward and forward on their passage to the shovel box, and that the pocket is, therefore, not a distinct element of the stoker, but, in effect, an extension of the conveying tube. Such movement of the fuel as takes place in the pocket, however, as I view it, does not effectively advance the fuel towards the shovel box, for, as the elevator returns to its lower position, the coal does not continue on its upward movement, but falls upon the elevator head, and returns with it to the latter's lowest point. The movement of the fuel in the pocket produced by the conveyer is merely such movement as would be produced in any receptacle by a forcible feed at the bottom of the receptacle. Consequently I think the Elvin pocket is not a part of the conveying apparatus itself, but is a distinct element of the Elvin stoker. Indeed, this seems to have been the view of its inventors, for in the specification of patent No. 1,267,644, page 3, lines 95–100, they said:

"In the operation of a mechanical stoker embodying our invention, the fuel, which is transferred from the coal bin of the tender to the locomotive, is delivered from the forward end of the conveyer casing into the fuel receiving pocket, 9d, and drops from the forward end thereof, into the elevator casing, 4. * * * "

And again, at page 2, lines 21–30:

"The shovel box, 9, is divided by a partition * * * into * * * a lower section, the rear portion of which forms a fuel receiving pocket, 9b, into which the forward or delivery end of the conveyer casing, 2a, opens."

For the foregoing reasons, I think that defendant's stoker infringes claims 1 and 2 of the Street patent.