## LOCOMOTIVE STOKER CO. v. HANNA STOKER CO.

(Circuit Court of Appeals, Sixth Circuit. March 17, 1927.)

No. 4369.

1. **Patents ⬧⬧⬧328—979,850, claims 1, 2, for distributing plate for locomotive stokers, held not infringed.**

Hanna patent, No. 979,850, claims 1 and 2, for distributing plate for locomotive stokers, *held* not infringed by plaintiff's patents sued on.

2. **Patents ⬧⬧⬧328—1,368,271, claims 53, 55, relating to locomotive stoker mechanism, consisting chiefly of plurality of elevating delivery conduits and deflector, held valid and infringed.**

Lower patent, No. 1,368,271, claims 53 and 55, relating to a combination in locomotive stoker mechanism of means for transferring fuel from tender to locomotive, and to elevate fuel above level of fire, and to deliver it to a plurality of points transversely of the fire, and a deflector for controlling the relative amounts of fuel supplied, *held* valid and infringed.

3. **Patents ⬧⬧⬧328—1,379,306, claim 10, for fuel conveyors for locomotives with means for reversible rotation of one conveyor independently of other, held not infringed.**

Lower patent, No. 1,379,306, claim 10, for conveyor for transferring fuel from bin to locomotive, and conveyor for elevating fuel to firebox, and means for reversing direction of rotation of one of conveyors independently of the other, in combination with locomotive firebox and fuel bin, *held* not infringed.

4. **Patents ⬧⬧⬧328—1,363,333, for device for relieving pressure on fuel-advancing means of locomotive stokers, held valid and infringed as to claims 1, 2, and not infringed as to claims 8, 9.**

Lower patent, No. 1,363,333, covering device for relieving pressure on fuel-advancing means of locomotive stokers, by reversing direction thereof to permit removal of extraneous matter, *held* valid and infringed as to claims 1 and 2, and not infringed as to claims 8 and 9.

5. **Patents ⬧⬧⬧312(4)—Infringement should not be found, unless reasonably clear.**

Infringement should not be found, unless at least reasonably clear.

6. **Patents ⬧⬧⬧328—1,371,252, for screw conveyor in locomotive stokers, held not infringed as to claim 3, and valid and infringed as to claim 7.**

Lower patent, No. 1,371,252, for a screw conveyor of fuel under pressure in locomotive stokers, *held* not infringed as to claim 3, and valid and infringed as to claim 7.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Patent infringement suit by the Locomotive Stoker Company against the Hanna

18 F.(2d)—17

Stoker Company. Decree for defendant, and plaintiff appeals. Decree affirmed in part, and in part reversed and remanded, with directions.

L. B. Mann, of Chicago, Ill., and Paul Synnestvedt, of Philadelphia, Pa. (Louis K. Gillson, of Chicago, Ill., and Alfred M. Allen, of Cincinnati, Ohio, on the brief), for appellant.

Drury W. Cooper, of New York City, and Walter F. Murray, of Cincinnati, Ohio (J. Snowden Bell, of New York City, Clarence A. Williams, of Pittsburgh, Pa., and John B. Hollister, of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This suit involves several patents in the locomotive stoker art, which, as now practiced, includes generally the transferring of coal by gravity or power from the tender to a point *below* the engine deck, its elevation therefrom to a point or points *above* the fire door, and its proper distribution therefrom by projection through gravity and/or other means— sometimes including steam blasts—over the surface of the fire. The art provides also for underfeeding coal as well as its overfeeding, but the underfeeding features are not directly involved in the litigation before us. Plaintiff sued upon five United States patents to Lower, listed in the margin hereof.[1]

Defendant, by counterclaim, alleged infringement of three patents granted to Hanna, likewise listed in the margin.[2]

The District Court held claims 10 to 14, both inclusive, of plaintiff's Lower patent No. 1,371,498, valid and infringed by defendant. These claims provide for "a lateral opening in a chamber extending from the *elevating* conduit walls, and thus affording a shoulder for arresting extraneous substances entering between the rim of the [elevating] screw and the conduit wall, with a cover plate to permit the removal of such substances." Defendant admits its infringe-

[1] No. 1,363,333, applied for August 1, 1918, granted December 28, 1920; No. 1,368,271, applied for October 6, 1912, granted February 15, 1921; No. 1,371,252, applied for September 26, 1914, granted March 15, 1921; No. 1,379,306, applied for February 19, 1917, granted May 24, 1921; No. 1,371,498, applied for August 1, 1918, granted March 15, 1921.

[2] No. 979,850, applied for June 25, 1906, granted December 27, 1910; No. 979,849, applied for October 10, 1906, granted December 27, 1910; No. 1,239,101, applied for August 28, 1913, granted September 4, 1917.

ment of these claims and the validity of the same. The District Court held claims 1 and 2 of defendant's Hanna patent No. 979,850, valid and infringed. Defendant was held estopped from claiming the infringement of Hanna patent No. 979,849 (for distributing plate), by reason of the decision of the Circuit Court of Appeals of the Third Circuit, in Locomotive Stoker Co. v. Mechanical Construction Co., 277 F. 636. Hanna's patent No. 1,239,101 was withdrawn by defendant during the trial. Plaintiff's remaining Lower patents were held not infringed, with the limitation hereinafter stated as to No. 1,363,- 333. None of the claims of those patents, so far as sued upon, relate directly to distribution. This review is had upon plaintiff's sole appeal, which complains of the sustaining of defendant's Hanna patent No. 979,850, as well as of the dismissal of the bill as to plaintiff's Lower patents other than No. 1,371,498.

[1] 1. *Hanna Patent No. 979,850* (counterclaimed by defendant).—This patent, applied for June 25, 1906, and patented December 27, 1910, antedates each of plaintiff's patents sued upon. Claims 1 and 2, the only ones in issue, relate to a distributing or firing plate. The fuel supplied by hand to an upwardly inclined hopper is fed by a screw conveyor—located within the hopper and operated by a reciprocating engine—to a feed plate located above the fire door, whence it falls by gravity onto a firing or distributing plate equipped with steam blasts. By adjusting certain guides the fuel may be directed to different portions of the distributing plate, as desired. The screw conveyor, as a means for elevating the fuel above the fire door, was then old, as was the idea of a distributing plate. As said in the specification:

"The general tendency of the channels and blasts * * * is to throw the coal toward the sides and rear corners of the firebox adjacent to the door. The coal actually entering the channels strikes against the outer abruptly turned walls thereof and is distributed into the rear corners, while that which passes out over the channels is distributed towards the sides and farther forward, some of it striking the walls and rebounding toward the central portions of the fire bed. By adjusting the guides $n^1$ substantially all the coal may be directed to one side of the firebox or the other, or to the center of the firebox, or the stream of coal may be divided and different proportions sent to one side or the other. * * * The recesses $t$ and $t^2$ [in the distributing plate]

permit a portion of the coal to fall onto the fire bed under the plate."

Claim 1 reads: "A distributing plate for blast feed stokers provided with a central portion recessed at its forward end and divergent channels formed in its upper face lying below the central portion of the plate, substantially as described." Claim 2 differs from claim 1 (a) in omitting the words "recessed at its forward end"; and (b) in adding to the description of the channels "and having their bottoms recessed at their outer ends." Plaintiff says that "the sole basis for the claims here sued upon is the recesses $t$ and $t^2$," and that the plaintiff's structure has not those recesses. Both validity and infringement are denied, and the defense of laches is set up, as well as an alleged estoppel through the judgment in Locomotive Stoker Co. v. Mechanical Const. Co. (C. C. A. 3) 277 F. 636. The District Court denied the estoppel urged and found infringement. Defendant's title to the patent seems established by its Exhibit No. 47, if, indeed, it is not practically conceded.

The distributor of plaintiff's alleged infringing device does not take the form of the plate of the patent in suit, but is a tube into which the coal is discharged directly from the screw elevator, and thus at the rear end of the tube, through which the fuel is projected to the fire bed partly by gravity and partly by steam blasts located near the point where the fuel leaves the elevator. At the bottom side of the front end of the tube, and extending slightly above the inner surface, is a recessed abutment lying transversely to the tube's axis. Pockets inclining outwardly and extending from the center of the tube are formed by the cutting away of the metal web connecting the abutment with the bottom of the tube. Under the influence of the steam blasts the lower part of the fuel stream collides with the abutment, part of it falling by gravity to the back corners and in front of the fire door, and part being driven back into the corners of the firebox. From the top of the tube, and overhanging the abutment, is a deflector plate against which strikes the upper portion of the fuel stream, projected forwardly and upwardly by the steam blasts, thereby being broadened out and so carried forwardly and downwardly, in part by gravity, to the fire bed. The coal in the center of the tube, which collides with neither the abutment nor the deflector, falls up and down the length of the firebox.

Plaintiff contends that its tubular distributor has not the recessed central portion

called for by claim 1, nor the divergent channels having their bottoms recessed at their outer ends called for by claim 2, nor anything corresponding with the central portion of defendant's plate, on which coal is deposited at the desired point by the wings and over which the blast operates; that the upper surface of plaintiff's abutment performs no function in the distribution of the coal compared to that of defendant's central plate portion; that the only coal which gets into plaintiff's "pockets" is that which is obstructed by the abutment, the upper surface of which has no function in distributing the coal and in no way corresponds to the central portion of defendant's plates, over the flat surface of which the coal is swept by a blast above the center of gravity to give the coal a horizontal and downward direction; while, as said, in plaintiff's device the steam jets are directed on an upward incline to throw the coal in a diffused column.

The asserted prior judgment is the decision of the Circuit Court of Appeals of the Third Circuit, just referred to, involving the Hanna patent No. 979,849, which, so far as important here, is distinguished from No. 979,850 in that the claims there in suit called for a "wide, unobstructed central portion" or an "unobstructed central portion" of the distributing plate, as contrasted with the claim here for merely "a central portion." But, so far as the question of infringement is concerned, the significant and applicable feature of the decision regarding No. 979,849 is the adjudication that the distributing tube of the alleged infringing device there involved, *which is the same structure involved here,* was not an infringement of the distributing plate of the Hanna device, which, as concerns the point now under consideration, was practically identical with the device of patent No. 979,850 here in suit. As said in the Mechanical Construction Co. Case (page 638):

"Plate distributors were old in the art, but Hanna's divergent side channel arrangement was a contribution. The device of the Locomotive Stoker Company * * * is a tubular arrangement, as distinguished from a plate device. * * * Fuel is not dumped or deposited and by steam momentum moved forwardly over the bottom of the tube, or across any plate, either obstructed or unobstructed, attached to any part of the tube, but, on the contrary, is blown or blasted through the tube and into the firebox. * * * The Hanna channels and the pockets of the defendant's device, though alike in their purpose, function in different ways.

Yet, if they were alike in function, as urged by the plaintiff, they have to do only with fuel distribution rearward. Both devices comprehend fuel distribution to the sides and to the forward end of the firebox. Distribution over these portions of the firebox is effected by mechanism of the defendant [plaintiff here] without the plate means provided by the Hanna patent, and by means so different from that contemplated by the Hanna patent that, notwithstanding similarity of channels and pockets, infringement is avoided." 277 F. at pages 638, 639. This decision of the Third Circuit Court of Appeals, if followed here, would necessarily result in the finding of noninfringement.

Without reference to the question of invention, and without deciding whether or not defendant is estopped by the decree in the Third Circuit to allege infringement of the patent here in question, and without passing upon the question of defendant's laches in failing earlier to complain of plaintiff's structure, which was altered to meet the requirements of the Third Circuit case, we are content to follow the conclusion of the Third Circuit, and so to find noninfringement.[3]

The decree of the District Court will be reversed, so far as concerns patent No. 979,850, and the claims in suit adjudged not infringed.

[2] 2. *Lower Patent No. 1,368,271.*—Applied for October 16, 1912, granted February 15, 1921. This is the first applied for of all plaintiff's patents, although not the first issued.[4] It was antedated, among other patents, by defendant's Hanna patent, No. 979,850, already referred to, as well as by the patent to Hanna, No. 1,002,513, whose combination included automatic oscillating guide wings for directing the fuel to the distribution plate or to any desired portion of the firebox. Claims 53 and 55 are involved.

The latter calls for the combination, in stoker mechanism, of "a single horizontal transfer conduit for transferring fuel from the tender forwardly to the locomotive [this feature was then old], and a plurality of upwardly extending conduits receiving the fuel from said horizontal conduit, and means ar-

---

3 For their application upon the literature of the stoker art, see Locomotive Stoker Co. v. Mechanical Construction Co. (C. C. A.) 277 F. 636, supra; Locomotive Stoker Co. v. Elvin Mechanical Stoker Co. (D. C.) 281 F. 195; Id., (C. C. A. 3) 286 F. 309.

4 Although granted less than two months later than No. 1,363,333, and but one month earlier than No. 1,378,498, it was applied for several years earlier than either of those patents.

ranged to elevate the fuel above the level of the fire and deliver it to a plurality of points transversely of the fire." Claim 53 differs from claim 55 in omitting "single" before "horizontal transfer conduit," and in calling for a "deflector for controlling the relative amounts of fuel supplied to said upwardly extending conduits." It will be seen that a plurality of vertical or elevating delivery conduits called for by both claims and the deflector called for by claim 53 are the prominent features presented here.

The District Judge was not only of opinion that there was no invention in providing a plurality of elevating conduits, in place of a single one—for the reason that mere duplication does not constitute invention—but that the point of distribution being single, it was immaterial whether the fuel was brought thereto in a single conduit or in a plurality of conduits. The judge also cited as anticipations the patent to Strouse, No. 1,044,939, and the patent to Street, No. 1,130,443, both of which are in the prior art, and each of which disclosed a plurality of downwardly extending chutes or conduits for distributing the fuel from a plurality of distributing points (hoppers or otherwise) to a plurality of locations on the fire bed. The judge was further of opinion that the claims were not infringed by defendant because its elevating screws operate in opposite directions to assist in dividing the coal (thus rendering the function of plaintiff's deflector superfluous), and that defendant's rib on its distribution plate with its two concave surfaces, while assisting in dividing the fuel into two equal parts, serves principally to "form duplicate chambers in which the elevating screws may rotate, is not adjustable, and in the true sense of the word does not deflect or control the stream of coal nor the amount of supply."

We are unable to concur in this view. The claims in suit do not relate to distribution, but to delivery. The cited patents of neither Strouse nor Street disclose a plurality of elevators; they relate only to distribution *from* a plurality of distributing points. The gist of claim 55 is the combination of a single transfer conveyor bringing fuel from the tender to the locomotive, and two divergent elevators raising the fuel in two separate streams to a convenient height for distributing over the fire. We think claim 55 involves invention, unless for defendant's contention that the *plurality of elevators* is mere duplication. The fact that it seems never before. to have occurred to any one to use a plurality of elevators to

reach the point or points of distribution, the failure of defendant's gooseneck stoker to achieve a high measure of success, the instant and continued success of the Lower stoker, and the obviously better result of elevator and delivery plurality, point strongly to the presence of invention in the combination of claim 55.

The contention of mere aggregation is, in our opinion, without merit. Nor are we impressed (as to claim 55) that the stoker in question is merely a modification of the old Street stoker. We think it amounts to patentable invention. The contention that defendant's Hanna stoker does not infringe claim 55 in that, as contended, it does not *deliver* to a plurality of points transversely of the fire, but to a single point, the *fire door*, immediately at the center of the firebox, is not impressive.

We are impressed by the plaintiff's contention that in the defendant's stoker the "coal is delivered to a plurality of points transversely of the fire, whether those points are considered on the grate, on the distributor plate, in the fire door, in the chutes 65 or at the points 64."

As to claim 53: The question of infringement depends upon whether defendant has the "deflector for controlling the relative amounts of fuel supplied to said upwardly extending conduits" disclosed by the patents in suit. This deflector is thus described in the patent: "In the lower ends of the conduits, a central gate or deflector 37 is pivotally mounted upon the transverse rod or shaft 38, provided with a controlling handle 39, so that more or less of the fuel may be deflected into one conduit or the other, as desired." Defendant's alleged infringing deflector takes the form of an integral rib projecting into a receiving chamber between the two diverging elevator conduits slightly above the point where they come together.

Defendant contends that this "rib," which "projects out from the back part of the wall of the receiving chamber, * * * does not extend out to a point beyond the center of the elevating screws, so that the coal is caught by the elevating screws, and it is under their control and moving upward under that control before it can possibly reach the deflector." There is satisfactory testimony that, before the fuel will be taken up by the elevator screws, it will go to the height of the top of the dividing rib in the front of the hopper, and that the rib assists materially, to say the least, in causing the discharge into the two respective chutes of the coal brought up severally by the right and left

hand conduits, whereby the coal streams are substantially guided to the respective sides of the firebox, and so delivered to the distributing plate. The word "adjustable," while contained in claim 54, is omitted from claim 53.

We conclude that as to patent No. 1,368,-271, the decree below should be reversed, and the claims in suit be adjudged valid and infringed.

[3] 3. *Lower Patent No. 1,379,306.*—Claim 10 alone is involved. It reads:

"10. In combination, a locomotive firebox, a fuel bin, a conveyor for transferring fuel from the bin to the locomotive, a conveyor receiving from said transfer conveyor and elevating the fuel to the firebox, and means for reversing the direction of rotation of one of said conveyors independently of the other."

The only important element is the last, viz. means for reversible rotation of one conveyor independently of the other. In the patent in suit, as illustrated, there are means for reversing the direction of rotation of the transfer screw without reversing the direction of rotation of the elevating screw.[5] There apparently are also means for reversing the rotation of the elevating screw without reversing the rotation of the transfer screw, and, regardless of the specific disclosures of means, it is conceded that it is possible to reverse the elevating screw without at the same time reversing the transfer screw.

The District Court, without deciding whether the claim and specification disclose a patentable combination, held the claim not infringed, for the reason that while defendant's structure permits the simultaneous reversal of the entire mechanism of transferring screw and (two) elevating screws, or the simultaneous reversal of both elevating screws while the transferring screw remains at rest, neither elevating screw could be reversed independently of the other, nor could the transfer screw be reversed independently of the elevating screws. The substantial question would seem to be, Does the term "one of said conveyors" mean "some one of the conveyors," or does it mean "either kind of conveyor—transfer or elevating?"

We think the claim is naturally construed as covering means whereby either the transfer conveyor or the elevating conveyor could be reversed independently of the other of those two conveyors. The transfer con-

veyor of the patent in suit, although consisting of a trough discharging into a cylinder transfer conveyor, both trough and transfer conveyor carrying an actuating screw, constitutes practically a unitary and continuous transfer conveyor, except so far as affected by the crushing device within the shell of the cylinder at its junction with the trough. The claim treats the transfer conveyor as unitary.

The reason for the reversible movement is thus disclosed by the specification: "Should the feed be clogged, as by the presence of extraneous matter, the transferring screws and crusher cone may be reversed by the means described, the elevating screw, however, remaining at rest, and thus holding the fuel which may be within the cylinder 26 [the elevating cylinder]. Should the clogging occur within the elevating cylinder the screw 34 [within the elevating cylinder] may be reversed; * * * it being desirable, however, to first withdraw the fuel within the horizontal portion of the conduit." It will also be noted that the claim calls for but two conveyors, one transfer and one elevating. The term "independently of the other" would naturally mean independently of the conveyor of the other type mentioned. Again, with the exception of claim 10 in suit, no one of the claims of the patent seems to cover reversal of the elevating screw independently of the transfer screw.[6]

We think the District Court rightly held claim 10 not infringed. While this view makes it unnecessary to consider defendant's argument that, if claim 10 is construed broadly enough to cover defendant's structure, as well as the earlier structures of 1912 and 1913 (in which the transfer screw cannot be reversed independently of the elevating screw), the claim was anticipated by the prior art, and so void, we think there is substantial force in that consideration. The decree, so far as it relates to patent No. 1,379,306, is affirmed.

[4] 4. *Lower Patent No. 1,363,333.*—The device of this patent provides for relieving

---

[5] But one elevating screw is illustrated in the patent or provided for in the claim. The same is true of the transfer screw.

[6] Claim 5 calls for a reversal of the transfer screw independently of the elevating screws. Claim 6 covers reversal of the transfer screw independently of the elevating screw, plus means for reversing the other screw, apparently meaning the elevating screw. Claims 7 and 8 have seemingly little bearing upon the question. Claim 11 covers the driving of both transfer and elevating screws in one direction, plus normal driving of transfer screw only in the reverse direction. Claim 12 covers the driving of the transfer screw in either direction, plus normal driving of elevating screw in one direction only.

pressure upon the fuel-advancing means by reversing the direction thereof in order to permit removal of extraneous matter wedged between the transfer or elevator screws and their respective tubes, provision for arresting which was made by Lower patent, No. 1,371,498, which, as applied to the elevating mechanism there involved, is, as already said, conceded to be valid and infringed.

The patent we are considering was applied for contemporaneously with the patent just referred to. Patent No. 1,368,271, already considered herein, had disclosed a crushing device in the longitudinal screw mechanism. The claims of patent No. 1,368,333 in suit are 1, 2, 8, 9, and 11. The decree of the District Court herein adjudged claims 1, 2, and 8 not infringed by defendant, without adjudging in the decree the question of their validity, nor the questions of validity or infringement of claims 9 and 11.

We first come to consider claims 1 and 2, which we print in the margin.[7] In the device shown in the patent, the reversing valve (manually controlled) is placed between the distributing valve and the source of steam supply, and engine reversal is accomplished by causing the distributing valve to move. In the 1914 and 1916 Hanna stokers (antedating the Lower patent we are considering) reversal is accomplished by changing the distributing valve from outside to inside admission, and vice versa, without moving that valve; in the Hanna stoker of 1923 reversal is effected by crossing the ports between the distributing valve and the cylinder without moving the valve; and in none of the Hanna stokers (and thus in none of the alleged infringing structures) is the reversal accomplished by a change in position of the distributing valve.

It is accordingly urged that, to save these claims from invalidity, they must be limited to a structure in which the manually operated reversing valve accomplishes engine reversal, by causing the distributing valve to move. We cannot agree with this contention. Though each element of the combination of the respective claims was old, invention in the combination is not necessarily forbidden. Nor do we regard any of these claims as attempting to secure a patent upon a mere function or result. Nor do we think the elements of any of them constitute mere aggregation. We are cited to no prior art which we understand discloses in one combination all the elements of the claims under consideration. We are disposed to think the claims in suit involve invention—not limited to the location of the reversing valve between the distributing valve and the source of steam supply.

We understand it to be conceded that in defendant's present stoker engine the piston, cylinder, operating valve and distributing valve are the same as in the Lower construction (which is that of the old Westinghouse pump engine), the reversing valve, however (as already stated), being between the distributing valve and the cylinder. In our opinion claims 1 and 2 must be held valid and infringed.

[5] As to claims 8 and 9: Under claim 9 the question is whether defendant's structure has a "pawl and ratchet" mechanism, and under claim 8 whether it has the same thing in reversible form. Defendant's contention is that its present construction has a "clutch mechanism" connecting the motor with the "fuel-advancing means," and nothing resembling a "pawl and ratchet mechanism." Probably the term "clutch mechanism" is broad enough to include "pawl and ratchet." The question is whether, as used here, "pawl and ratchet" is broad enough to include, or necessarily be the equivalent of, "clutch mechanism." The question is not free from difficulty. Ordinarily in any "pawl and ratchet" mechanism the pawl is loose and overruns the ratchet on the return stroke, the two members being in the same plane; while the clutch mechanism usually operates at right angles to the plane of the member to be clutched, with no overrunning of one part by the other in the release movement. The complete operation in defendant's structure is not very clear; and it is perhaps enough to say that infringement ought not to be found unless at least reasonably clear, and that by calling, in claims 1 and 2 for "clutch mechanism" connecting motor and fuel-advancing means, and in claims 8 and 9 for "pawl and ratchet mechanism" for the same purpose, the inventor will be presumed to have intended to recognize an actual distinction between the two mechanisms.

---

[7] "1. In a locomotive stoker, the combination with fuel-advancing means, a reciprocating driving motor and clutch mechanism connecting such elements, automatic valve mechanism for controlling the motor, and a supplemental manually controlled valve for reversing the direction of movement of the motor piston during its stroke.

"2. In a locomotive stoker, the combination with fuel-advancing means, a reciprocating driving motor and clutch mechanism connecting such elements, automatic valve mechanism for controlling the motor, and manually controlled means for relieving the pressure of the motor upon the clutch mechanism."

The decree of the District Court will be so modified as to hold claims 1 and 2 valid and infringed, and claims 8 and 9 not infringed.[8]

[6] 5. *Lower Patent No. 1,371,252.*—The specification, omitting reference to figures, thus describes the prominent features of the invention:

"A screw conveyor, shown as comprising two sections, mounted upon a single shaft, is located within the hopper and transfer tube. This conveyor is shown as non-continuous or sectional, for the purpose of providing space for a plurality of vanes carried by the shaft and co-operating with a plurality of fingers for crushing the fuel and for stopping any extraneous material of large size, * * * these vanes being made of such strength that they will either reduce any such material or will stop the driving motor, in which event the operator will remove by hand, the clogging material. * * * Within the [elevating] tubes there are located screw conveyors. The receiving chamber is preferably of small capacity, so that the material advanced by the [transfer] screw is forced into the lower ends of the [elevator] tubes, whereby the transferring screw assists the elevating screws in the performance of their function, overcoming the tendency of the material to rotate about the axes of the latter without advancing, due to its weight and the frictional resistance."

---

8 Claim 11 reads as follows:
"In a locomotive stoker, in combination, means for advancing fuel, mechanism for driving such means, power means for actuating such mechanism, and means for relieving pressure upon such mechanism during its advance movement, the action of the said last-named means leaving said mechanism in operative condition."

As already said, the District Court did not pass upon the questions of validity and infringement of this claim. No error is assigned thereon, unless or except as contained in assignment No. 7, "in holding that the defendant's stoker is not an infringement of the claims of patent No. 1,363,333 which were declared upon."

The differences, as respects validity and infringement of claim 11, as distinguished from claims 1 and 2 on the one hand, and claims 8 and 9 on the other, are not, to our minds, clearly presented by testimony and briefs. In view of our conclusion respecting the four other claims involved, perhaps neither party may think a determination regarding claim 11 of practical importance. For these reasons the claim has not been passed upon. Should either party deem its adjudication necessary, application therefor may be presented within 20 days, accompanied by typewritten brief on the questions both of validity and infringement, to which the other party may in like manner reply within 10 days thereafter.

---

The third and seventh claims alone are involved. Claim 3 reads:

"3. In a locomotive stoker, in combination, a receiving chamber adapted to be located below the deck of a locomotive, transfer mechanism for delivering fuel to the chamber under pressure, and a plurality of screw elevators leading from the chamber and adapted to deliver independently to the locomotive firebox, and located outside thereof."

Defendant denies both invention and infringement. As to this claim the asserted grounds of noninfringement are, first, that in defendant's structure the fuel is not delivered under pressure to the chamber to which the transfer conveyor delivers it and from which the elevator screw takes it; and, second, that the latter did not deliver the fuel independently to the firebox. The District Court found each of the two claims not infringed.

Plaintiff contends that the language of the specification was intended to describe, and that the words "under pressure" mean that "constant pressure of oncoming coal which is necessary to make the screw elevators operative." Lower testified that he "had to force the coal into the receiving chamber by the conveying screw with such force as to make it carry it *laterally* into the grasp of the elevating screws," and that the words "under pressure" in the claim refer to the action of the horizontal or conveying screw in forcing, pushing, or squeezing the coal into the elevator screws.

Defendant contends, and its expert testified, that while in the device of the patent the pressing or squeezing action testified to by Lower is necessary to force the coal into the elevating screws, in defendant's structure the fuel, as it is brought forward by the transferring screw, is delivered directly into the path of the two elevating screws, so that no pressure is required to deliver the fuel to the two elevating screws, and that the coal is caught up thereby before it comes in contact with any part of the casing by which it is surrounded and is elevated to the firebox, "so that the [elevating] screws take the coal from the transfer screw directly and without any pressure."

The trial judge, while recognizing that coal must be under pressure, if moving in any receiving chamber or through any conduit beyond the end of the conveyor means, was of opinion that to be pressed forward by coal in back of it is not new or novel, and is manifestly not within the realm of patentable invention; nor, in his opinion, was it within

the contemplation or disclosure of the patent.[9]

Without being unmindful of the force of plaintiff's argument that coal can be gotten from the transfer conduit to the vanes of the screw elevator only through the opening in the conduit, and in opposition to the tendency of the screw to discharge it back through that same opening, and that this coal must be delivered to the elevating screw under sufficient pressure not only to advance it to a position on the vanes, but to support it there against the tendency of centrifugal force to throw it back through the opening, as well as the continued tendency of gravity to roll it back upon the spiral incline, as well as other arguments in support of the proposition that in defendant's stoker the fuel is delivered "under pressure", we are better satisfied to accept the view of the District Judge, that the forward pressure of coal by that in back of it is not within the contemplation or disclosure of the patent before us.

This view makes it unnecessary to determine, as respects claim 3, whether invention is involved, or whether in defendant's stoker the fuel is delivered "independently" to the locomotive firebox.[10]

Claim 7 reads:

"7. In a locomotive stoker, in combination, a transferring screw, an elevating screw receiving from the transferring screw, a single power-actuated reciprocating rack bar, and gears associated with the two screws and meshing with the rack bar."

Lower testified that by the term "gears associated" he means "any two gears that mesh with the rack bar and convey their motion through intermediate mechanism, either gears or shafts or pawls, to the screws."

We think the claim involves invention. Its conception is that the reciprocating engine, by the use of a single rack bar, operates both the transfer screw and the elevating screws. The combination of a transfer

screw, elevating screw or screws, and a motor connecting with and driving both screws, was not new. But the vital thought of using a *reciprocating* engine (of the Westinghouse type) which through one rack bar accomplished the driving of both screws was new. The solution was simple, when discovered, but had not before been obvious to the skilled mechanic, as evidenced, not only by Lower's frequent experiments before the desired result was accomplished, but also the pronounced success, of the device and (after its successful use by Lower) its adoption by Hanna, the active competitor of Lower, who had before rejected or abandoned the idea of a reciprocating engine for a two-cylinder engine. It had the advantage over all other types of being instantly reversible, and as affording the quick release of foreign matter.

Not the least of the problems encountered by Lower was finding room upon the crowded locomotive to place the engine and rack bar, which latter was the only mechanism which could be used with a reciprocating engine. Lower installed the engine horizontally upon the side of the locomotive, below the cab. We think Lower's device not only involves a change of operation, but accomplished a new and useful result. In our opinion, the District Judge was in error in thinking that the claim, if held valid, would cover any combination of rack bar and elevating screw mechanism. It covers, in our opinion, only the combination of reciprocating engine and rack bar, horizontal transfer screw and elevating screws.

We also think the claim infringed. Defendant's device has each and every element of claim 7, and the latter reads upon defendant's device, provided defendant's gears are "associated with the two screws" within the meaning of the claim. The method of association of gears with the respective screws is not precisely the same, but we find no material difference as respects closeness or remoteness of association. The fact that in Hanna the conveyor screws work continuously, while in Lower they work only intermittently, is not important. Hanna's addition to Lower of a device for utilizing the return screw does not avoid infringement. The decree of the district court will be so modified as to adjudge claim 3 not infringed, and claim 7 valid and infringed.

The record will be remanded to the District Court, with instructions to enter a new decree not inconsistent with this opinion. Plaintiff appellant will recover three-fifths of the costs of this court. The District

---

[9] The court further said: "In the absence of the deflector of Lower's patent, No. 1,368,271, one of the elevating tubes is made smaller in size than the other because of the difference in efficiency of the two screws turning in the same direction. The coal must be forced into these screws and tends to rise upon them by reason of their own movement. This is not necessary in the defendant's device, which the evidence shows can be operated without the upper cover attached, and in which the only pressure exerted is that which forces the coal forward over the dividing rib and into the operating base chambers of the elevating screws."

[10] This feature of independent delivery rests upon the office history of the patent we are considering.

Court will award to or against the respective parties costs in that court on the basis of the respective final results.