## ROBERTS v. GENERAL ELECTRIC CO.
### No. 5802.

Circuit Court of Appeals, Third Circuit.

Sept. 19, 1936.

Edward Davis, of Philadelphia, Pa. (Melville D. Church and R. Clyde Cruit, both of Washington, D. C., of counsel), for appellant.

Merrell E. Clark and Charles H. Walker, both of New York City, and Howson & Howson, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

This appeal involves the alleged infringement of the Kusel patent No. 1,-847,839 by the "Monitor Top" or "Ten Star" household refrigerator manufactured by the appellee. The District Court found the Kusel patent to be valid but not infringed.

The Kusel invention was reduced to practice in August of 1923, according to the findings of the District Court. The patent was filed on October 1, 1926. The rights on this patent were obtained by the Kulair Corporation in the same year. However, it appears that no machine embodying this invention was ever commercialized. When the Kulair Corporation became bankrupt in March, 1933, its assets, including the Kusel patent, were valued at $147.25. The trustee in bankruptcy, being of the opinion that the appellee's product might possibly infringe the Kusel patent, sold it to the appellant for the purpose of bringing suit on the possible infringement.

The principles and mechanics of electric refrigeration are comparatively simple. A liquid, such as sulphur dioxide, is run through a series of coils known as the evaporator, in which a low atmospheric pressure is maintained and which is within the refrigerator cabinet. The liquid, due to the reduced pressure maintained within the coils, vaporizes. The process of vaporization consumes heat, which heat must come from the air, and from objects, such as food, within the cabinet. The vapor is then pumped from the evaporator by an electrically driven pump, known as the compressor. This pump, the compressor, besides maintaining the low pressure within the evaporator, compresses, and thereby elevates the temperature of the vapor. The vapor is then passed through a cooling apparatus known as the condenser. In the process of cooling the vapor returns to the liquid state and is ready to begin another cycle. Due to the fact that the evaporator is inside the refrigerator cabinet and the compressor and condenser are outside of the cabinet, the heat that is absorbed from the interior by the process of vaporization is dispersed outside of the cabinet. These principles were not new at the time of the Kusel invention, but were well known to the prior art.

The Kusel invention is concerned with the mechanical construction and mounting of a condenser of the air-cooled type. The single claim, No. 12, of the Kusel patent alleged to have been infringed reads as follows: "In a refrigerating apparatus, the combination with a compressor and driving mechanism therefor, of a closed wall condenser comprising a hollow cylin-

drical shell enclosing said compressor and providing a rigid housing therefor."

The patent describes the construction of the condenser as follows:

"A hollow tubular shell condenser formed of two concentrically arranged tubular members, each preferably corrugated and connected together in such a manner as to leave a relatively narrow space or chamber between the two tubular members, for the circulating vapor or gas and at the same time making a strong, rigid and imperforate casing. The compressor is suitably mounted within this casing or condenser and the fly wheel on one end of the compressor shaft is provided with fan blades, the diameter of the fly wheel being slightly smaller than the inside diameter of the condenser or casing. This combined fly wheel and fan is positioned adjacent one open end of the condenser so that the draft of air created by the fan will cool the whole inner surface of the condenser and at the same time the condenser or casing will confine all of this air as it passes therethrough, and direct the same with full force and effect against the compressor. * * *

"It will be apparent that owing to the novel construction of the condenser a rigid and complete housing is provided for the essential working parts of the refrigerating apparatus. At the same time this type of condenser comprises in its base a liquid receiver, making it unnecessary to build a separate receptacle for this purpose as would be necessary where the conventional type of coil condenser is used."

The appellee's product, which is alleged to infringe the above claim, was found by the District Court to have the following construction: "The defendant's condenser is made by pressing zigzag channels into two flat sheets. The sheets are then put together back to back with the channels in register forming a serpentine pipelike passage way between the sheets. The edges are then folded over and welded and the entire construction is finally bent into circular form and held in place by welding the ends of the sheets together. In so doing the outer sheet is stretched and the inner sheet compressed and that makes a radial pressure between the two sheets holding them tightly together. It appears to me to be the fact and I so find that there is no leakage or seepage between any two turns of the zigzag paths."

We agree with the carefully considered opinion of the District Court in finding that the appellee's product does not infringe the Kusel patent. In considering this question, the District Court said: "Generally speaking, I doubt that a wall which has a hollow channel zigzagging throughout between its surfaces is by any standard of interpretation a hollow wall. But when the question is considered in the light of the Kusel patent it seems likely that Kusel meant a shell which was hollow in the sense of being entirely empty so as to permit the free passage of liquid or vapor anywhere between its surfaces. The hollowness in the Kusel patent had a definite function—to permit the condensed vapor to descend directly into a liquid receiver at the bottom provided by the condenser itself—and this strongly implies that he had in mind the kind of hollowness that I have just referred to. Certainly the defendant's structure is not hollow in this sense."

We might add to the above analysis that the appellee, who had formerly used a copper coil condenser, had in effect merely closed the interstices between the turns of the coil. Furthermore, the condenser does not house the compressor in the appellee's product. Though it does encircle the compressor, the compressor is housed in a separate hermetically sealed casing. The brief for the appellee has suggested the apt comparison that a man in a house cannot be considered to be "housed" by the fence around the house.

Neither does the condenser of the appellee's product function as a liquid receiver. Due to the fact that an excess of liquid in the machine was needed to take care of the loss of a certain amount by leakage, a liquid receiver was found to be necessary, but the appellee has obviated this necessity by effectually preventing any leakage.

The appellant says that the decision of the District Court denied him the benefit of the doctrine of equivalents, but in this he is mistaken. This is not a pioneer patent. It is now over nine years old and is still a mere paper patent. It is accordingly entitled only to a strict construction, confining its scope to the particular device it disclosed. Stewart-Warner Corporation v. Jiffy Lubricator Co., 81 F.(2d) 786, 793 (C.C.A.8); Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. Ry. Co., 172 F. 371 (C.C.A.6). In the case of Elvin Mechanical Stoker Co. v. Locomotive

Stoker Co. (C.C.A.) 286 F. 309, 311 (certiorari denied 262 U.S. 759, 43 S.Ct. 705, 67 L.Ed. 1219) Judge Buffington, speaking for this court, said: "The Pennsylvania Railroad, which has a shop right to manufacture it, has made but one, and there is no proof that the plaintiff company, which now owns the patent, or the patentee, have ever manufactured any, although the device is some 14 years old; the patent having been applied for in 1908. Such being the fact, we are justified in holding that Gee will receive all the patent protection to which he is entitled by confining his claims to the particular structure he disclosed, and to the mechanical equivalents of its parts."

The condenser of the appellee is not the mechanical equivalent of the device described in the Kusel patent. It is more nearly the mechanical equivalent of the coil condenser previously used by the appellee. It is not hollow in the same sense of the term as the Kusel condenser, nor does it perform the functions of a housing for the evaporator or of a liquid receiver.

Having reached the conclusion that the Kusel patent was not infringed by the appellee, we do not find it necessary to pass upon the question of validity. The decree, in so far as it adjudges the patent not to have been infringed, is affirmed.