## LANOVA CORPORATION et al. v. NATIONAL SUPPLY CO.
### Civ. A. No. 44.

District Court, W. D. Pennsylvania.
Nov. 21, 1939.

Reed, Smith, Shaw & McClay and Charles Denby, Jr., all of Pittsburgh, Pa. (Brown, Jackson, Boettcher & Dienner, Arthur H. Boettcher and Henry H. Babcock, all of Chicago, Ill., of counsel), for plaintiffs.

Edward A. Lawrence, of Pittsburgh, Pa. (Owen & Owen, Allen Owen and Carl F. Schaffer, all of Toledo, Ohio, of counsel), for defendant.

McVICAR, District Judge.

Plaintiffs, the owners of two United States patents numbered 1,803,262 and 1,954,082, brought this action for an accounting and for injunctive relief against the defendant, alleging that it had infringed said patents. The answer raised the issues of validity and infringement. A hearing was held. After hearing, the court makes the following findings of fact and conclusions of law:

Findings of Fact.

Lanova Corporation, plaintiff, is a Delaware corporation having its principal place of business in Long Island City, New York; Acro Aktiengesellschaft, plaintiff, is a stock corporation of Switzerland, located at Kussnacht on the Rigi; the National Supply Company, defendant, is a Pennsylvania corporation having its principal place of business in Pittsburgh, Pennsylvania.

United States Letters Patent No. 1,803,-262, one of the two patents in suit, issued to said Acro Aktiengesellschaft on April 28, 1931, upon an application of Franz Lang, of Stuttgart, Germany, assignor to Acro Aktiengesellschaft, filed in the United States Patent Office on March 11, 1926, based upon a patent application filed in Germany on February 13, 1926.

In October, 1937, said Acro Aktiengesellschaft, while possessed of said patent No. 1,803,262, granted to said Lanova Corporation the exclusive license right to its engine patents, including said patent No. 1,803,-262, with the right to grant simple, nontransferable sub-licenses thereunder, said right including the right to sue infringers of said engine patents, including said patent No. 1,803,262, in the United States; and said rights of said Lanova Corporation have ever since remained accordingly.

United States Letters Patent No. 1,954,-082, the other of the two patents in suit, issued to Lanova Aktiengesellschaft, a corporation of the principality of Liechtenstein, of Vaduz, Liechtenstein, on April 10, 1934, upon an application of Franz Lang, Munich, Germany, assignor to Lanova Aktiengesellschaft, filed in the United States Patent Office on January 22, 1932, based upon a patent application filed in Germany on January 24, 1931.

On April 17, 1937, said Lanova Aktiengesellschaft, while possessed of said patent No. 1,954,082, assigned the entire right, title and interest therein and thereto, to said Lanova Corporation, plaintiff, and said entire right, title and interest therein and thereto, have ever since remained accordingly.

Said patents 1,803,262 and 1,954,082 are for certain improvements in the compression-ignition class of internal combustion engines. "Diesel" or "full Diesel" means an engine of the compression-ignition class. Compression ignition is distinctive in its ignition of fuel by contact with air the temperature of which has been increased to above the ignition temperature of the fuel by compression by movement of the engine piston; readiness to ignite the fuel permeates the entire mass of air thus compressed, and the ignition of the fuel is thus directly dependent upon its injection into that mass; and fuel injection is directly related to engine crankshaft position.

Said Lanova Corporation employs a corps of technical men and it has a drafting room and laboratory where it is engaged in the design, building or rebuilding, and demonstration testing of example compression-ignition engines for its licensees or prospective licensees, mostly engine manufacturers operating under or considering operating under license agreements with said corporation. It derives its main revenue by way of royalties from its licensees under its patent rights.

Compression-ignition engines were originally relatively low speed engines and had always the advantages of higher economy than other classes of engines and of capability of using lower grade liquid fuels, but there were certain disadvantages indigenous to such engines which became particularly manifest when attempts were made to go to higher speeds. The invention of the first patent in suit (1,803,262) came at a time when engines were changing from medium speed to higher speeds.

The engine described in patent No. 1,-803,262 is described therein as a "self-igniting oil motor." The patent states: "This invention relates to self-igniting motors in which the chamber wherein the air is compressed by the piston on its compression-stroke is subdivided into at least two chambers which communicate by at least one aperture having a throttling cross-sectional area. One of the chambers at least is arranged to be reduced in size or volume as the compression proceeds so as to force a flow of compressed air into the other chamber or chambers through a throttling constriction of the aperture or communication. According to the invention the parts are so arranged and constructed that fuel injected into the chamber before the end of the compression-stroke

in a direction toward, or practically toward, the constriction meets such air-flow in a funnel-shaped space tapering toward and arranged in advance of the constriction. More specifically, under this invention at least a portion of the walls of the compartment with fixed volume is arranged in a fixed relation to the cylinder of the motor and the compression is increased to such a degree, that the charge of mixed fuel and air, even at the normal starting of the cold engine, is ignited without requiring any auxiliary igniting device."

The drawings contain seven forms of construction. The patent states relative to construction:

"In all seven modifications the cylinder is indicated by the reference character Z, the piston by a or a' respectively, the two compartments of the compression chamber by b and d and the fuel nozzle arranged on the cylinder by c. The two compartments b and d are connected with each other at least during the last part of the compression stroke by a throttling constriction f, which preferably is formed as short as possible.

"As shown, the fuel-nozzle c is arranged outside of and separate from the compartment b, which compartment is entirely imperforate, access thereto being only through the constriction f.

"The transit from the chamber d to the throttling constriction f is formed by a funnel-shaped mixing passage g, which latter materially assists in the ignition and combustion, as experience has shown. This funnel-shaped passage or mixing chamber, as shown, lies between the fuel-injector-nozzle c and the throttling constriction f and tapers from the nozzle c to the constriction f, the nozzle being at the widest portion of the funnel-shaped passage or chamber."

The operation of the engine in accordance with Fig. 1 is stated in said patent as follows: "The air entering into the cylinder during the suction stroke is compressed during the next stroke, whereby a brisk flow of air through the throttling constriction f into the supplemental compartment b arranged on the cylinder is produced. The fuel nozzle c has the same longitudinal axis as said constriction, so that at least a portion of the fuel is injected into the core of the air current. This fuel injected through the nozzle towards the end of the compression stroke contacts already in the mixing funnel g, that means

before the constriction f, with the air flowing into the compartment b and being heated and ignited on account of the compression, the compressed air stored in said compartment b flowing through the constriction into contact with the mixture to support and maintain the combustion as the piston recedes."

Plaintiffs declare upon and rely upon claims 1 and 2 of said patent. Claim 1 reads as follows: "1. In an oil-motor for self-ignition comprising a cylinder and a piston cooperating to form a compartment arranged to be reduced in volume by the piston, said cylinder being provided with a second compartment of fixed dimensions communicating with the first compartment by a passage tapering from the first compartment toward the second compartment and a throttling constriction between the tapering passage and the second compartment, in combination with a fuel-injector arranged in advance of the tapering passage to inject fuel into and toward the same substantially at the end of the compression-stroke of the piston, said piston being arranged to compress the air in said compartments so highly as to ignite by the heat of compression fuel injected into said highly compressed air."

Claim 2 is the same as claim 1, except that it adds, in relation to the fuel-injector, the words, "whose axis coincides with the axis of the tapering passage."

The function of chamber b of patent No. 1,803,262 is that of an auxiliary combustion chamber. The function of chamber g is to first mix the fuel and air therein, and to thereafter act as a combustion chamber for such fuel and air mixture, supported by additional pure air which is delivered into the chamber g from the chamber b during the power stroke of the piston. The shape of chamber g is not important in accomplishing quick discharge of the contents of chamber b.

Chambers b, g and d of patent No. 1,-803,262 each performs a separate and distinct function and must each be present and cooperating in an engine embodying the combination claimed by either claim 1 or claim 2 of said patent.

The only novel feature of the engine shown and described in patent 1,803,262 is the specific form of the mixing and combustion chamber g referred to in the claims as "a passage tapering from the first compartment toward the second compartment."

The injection of fuel "substantially at the end of the compression-stroke of the piston", as called for by each of claims 1 and 2 of patent 1,803,262, was old and well-known in the art of self-igniting oil motors for many years prior to the date of application for said patent.

It was old and well-known in the art of self-igniting oil motors for many years prior to the date of the application for patent 1,803,262 to have the piston compress the air in the compression space "so highly as to ignite by the heat of compression fuel injected into said highly compressed air," as called for by each of claims 1 and 2 of patent 1,803,262.

The auxiliary combustion chamber b in patent 1,803,262 and the combination of elements as defined in claims 1 and 2 are defined in White patent 170,433 and were known in the prior art.

Defendant's engine which is charged to infringe is manufactured under and in accordance with the drawings of Ramsey patent 2,067,461, which issued to defendant on January 12, 1937.

There is no element in defendant's engine which corresponds either in form or function to the chamber g of patent 1,803,-262.

The auxiliary chamber of defendant's engine marked "9" in the drawings of the Ramsey patent 2,067,461 functions as an auxiliary combustion chamber.

In defendant's engine the fuel spray has clearly defined characteristics whereby the finely divided fuel envelope is delivered to the main combustion chamber marked "7" in the Ramsey patent, and the core of the fuel spray comprising the heavier particles of oil is delivered by the force of the injection into the auxiliary combustion chamber marked "9" in the Ramsey patent.

The National Supply Company, defendant, has a number of manufacturing plants, at one of which it manufactures compression-ignition internal combustion engines of the type herein involved, and, since April 10, 1934, the date of the later of the two patents in suit, and prior to the filing of the bill of complaint herein, it manufactured, used and sold, in the Western District of Pennsylvania, engines such as illustrated and described, in essential part, in plaintiff's Exhibit 11, the head of which is exemplified in the sectioned physical exhibit, defendant's Exhibit G.

Plaintiff, Lanova Corporation, notified defendant of infringement of both patents in suit by letter dated March 8, 1938, which was received by defendant.

The claims of patent 1,803,262 include the tapered mixing and combustion chamber g as a distinct and essential element in addition to and in combination with the chamber d of variable volume and the chamber b of fixed volume. Defendant does not infringe these claims because its engine does not embody any element which corresponds with the tapered mixing and combustion chamber g either in form or function.

Defendant's engine does not embody or employ the combination of elements set forth in either claim 1 or claim 2 of patent 1,803,262, and therefore does not infringe either of said claims.

Plaintiff's patent, 1,954,082, is designated as a "Diesel engine with air and pressure reservoir." The patent states: "My invention relates to Diesel engines, and more particularly to engines having an air storage chamber or reservoir."

As to the object of the patent it is stated:

"It is the object of my invention to improve the performance of an engine of this type.

"To this end, in combination with a main combustion chamber connected to the cylinder of the engine, an air storage chamber at one side, and a fuel injection nozzle at the other side of the main combustion chamber, I provide a baffle between the main combustion chamber and the cylinder, which baffle extends toward the nozzle and across part of the main combustion chamber.

"The improvement achieved by this arrangement is due to the fact that, during the charging of the air storage chamber and the injection of fuel, the air expelled from the cylinder and forced into the air storage chamber through the main combustion chamber and the fuel flow in the same direction, while during the discharge of air from the air storage chamber and the continued fuel injection, the air and the fuel flow in opposite directions."

The construction of the patent, as stated therein, is as follows: "Referring now to the drawings, a is the cylinder, b is the piston, c is the cylinder head, d is the main combustion chamber, e is the fuel injection nozzle, and f is the air storage chamber.

The main combustion chamber d is of smaller volume than the cylinder a so that it is disposed inwardly at the cylinder and away from a portion of the wall thereof. The fuel nozzle e, the chamber d and the air storage chamber f are preferably arranged with a common axis or centre line which extends at right angles, or substantially so, to the axis of the cylinder a."

The baffle in this patent is described therein as follows: "Referring now to Figs. 1 to 6, g is the baffle referred to, which extends from the side where the reservoir f is connected to the chamber d, toward the side of the nozzle e, leaving open a slot h between the cylinder a and the chamber d. The baffle g is preferably arranged at right angles to the axis of the cylinder a and its edge, which may be sharpened so as to be inclined downward and inward of the cylinder as shown in Fig. 1, is inclined to the line connecting the reservoir f and the nozzle e, as shown in Fig. 2. The main combustion chamber d, as also shown in Fig. 2 is preferably arranged eccentrically to the axis of the cylinder a, adjacent one side thereof, and slot h is disposed so that the air and fuel mixture issuing from the combustion chamber is projected into the cylinder substantially tangentially thereof and, is given a whirling movement in the cylinder, as indicated by the arrows in Fig. 6."

The operation of the engine described in this patent is stated therein as follows:

"In operation, the inlet valve k is opened during the suction stroke of the piston b and fresh air is drawn into the main combustion chamber d. When the piston b moves inwardly on the compression stroke as shown in Fig. 3, the air flows from the cylinder a to the chamber f through slot h and the combustion chamber d in the direction indicated by the arrows in Fig. 3. Since slot h is adjacent one side of the cylinder, air flowing to this slot from the cylinder travels substantially circumferentially of the cylinder, which imparts to the air in the cylinder a desirable whirling motion or rotary turbulence, as indicated in Fig. 4. During this period the injection from the nozzle e occurs and the ejected fuel flows in the same direction as the air, it being noted that the air flowing to air storage chamber f flows along the path of fuel injection so as to entrain the fuel and facilitate entry thereof into chamber f. On the expansion stroke of piston b the

746

air and fuel mixture, previously stored in chamber f under high pressure, is discharged into the combustion chamber d at high velocity and in the opposite direction to the jet of fuel which still issues from the nozzle e, Fig. 5.

"The described flows of the air and fuel mixture and the injected fuel assure intimate mixing of the air and fuel, while producing high turbulence of the fuel mixture in the cylinder resulting in increased smoothness and efficiency in operation of the engine."

Plaintiffs declare upon and rely upon claims 1, 2 and 6. Claim 1 reads: "1. In combination in an injection engine, a cylinder and a piston operating therein, a combustion chamber overlying and opening into the cylinder, an air storage chamber opening into the combustion chamber at one side thereof and otherwise closed to the cylinder, an injection nozzle opening into the combustion chamber at the opposite side thereof, and a baffle between the combustion chamber and the cylinder and substantially normal to the cylinder axis, said baffle extending from one side of the combustion chamber and terminating short of the other side thereof and defining with the latter a restricted opening between said combustion chamber and the cylinder."

Claim 2 is the same as claim 1 except that it states in claim 2 that the combustion chamber has an air inlet passage opening through its roof, an overhead valve controlling said passage.

Claim 6 reads: "6. In combination in an injection engine, a cylinder and a piston operating therein, a combustion chamber overlying and opening into the cylinder, an air storage chamber opening into the combustion chamber at one side thereof, and an injection nozzle opening into the combustion chamber at the opposite side thereof, the opening between the combustion chamber and the cylinder being disposed to discharge fuel mixture from the combustion chamber into the cylinder substantially tangentially of the latter."

Claims 1, 2 and 6 of patent 1,954,082 relate to injection engines, which term includes engines commonly known as Diesel or compression ignition engines and also those commonly known as semi-Diesel engines.

The operation of an engine made in accordance with Figs. 1 to 6 of patent 1,-

954,082 would depend, to a large extent, upon the size and proportion of the chamber f, and its relation to the remaining compression space.

Patent 1,954,082 states that the eccentric relation of the combustion chamber d to the cylinder is only a preferred arrangement.

Patent 1,954,082 contains no statement that tangential whirl in the cylinder is or may be produced as a result of the eccentric location of the main combustion chamber with reference to the axis of the cylinder, and in the absence of the baffle g and opening h or some equivalent elements.

The shape and function of the slot h and the baffle g are important parts of the disclosure of patent 1,954,082 and are material elements of the claims in suit.

The eccentric arrangement of the main combustion chamber d with reference to the cylinder axis in patent 1,954,082 and the direction of discharge from chamber f tangentially of the cylinder walls are not the mechanical equivalent of the baffle g and slot h for discharging fuel mixture from the combustion chamber into the cylinder.

The element "a baffle between the combustion chamber and the cylinder and substantially normal to the cylinder axis, said baffle extending from one side of the combustion chamber and terminating short of the other side thereof and defining with the latter a restricted opening between said combustion chamber and the cylinder" recited in each of claims 1 and 2 of patent 1,954,082 refers to the part marked g in Figs. 1 and 2 of the drawings of said patent.

The word "opening" in the portions of claim 6 of patent 1,954,082 which read "a combustion chamber overlying and opening into the cylinder, * * * the opening between the combustion chamber and the cylinder being disposed to discharge fuel mixture from the combustion chamber into the cylinder substantially tangentially of the latter", refers to the opening marked h in Figs. 1 and 2 of the drawings of said patent.

The chamber f of patent 1,954,082 is a storage chamber for air into which some fuel is carried. There is no disclosure in the patent that combustion takes place therein or that a discharge from this chamber acts in any way on the contents of the cylinder.

There is no rotary movement of the gases in the cylinder space of the defendant's engine.

There are no elements in the defendant's engine which correspond in form or function to the baffle g or to the slot or opening h of patent 1,954,082.

Defendant's engine does not infringe claim 6 of the patent because it contains no "opening" between the combustion chamber and the cylinder "disposed to discharge fuel mixture from the combustion chamber into the cylinder substantially tangentially of the latter," as called for by claim 6, nor any mechanical equivalent thereof.

Defendant's engine contains no "air storage chamber opening into the combustion chamber," as called for by each of the claims in suit, but does contain an auxiliary combustion chamber opening into the main combustion chamber which is different in function from the air storage chamber of patent 1,954,082.

The defendant does not infringe claims 1, 2 and 6 of patent 1,954,082.

The proofs do not show that any engine was ever built by plaintiffs or their licensees under either patent in suit.

### Conclusions of Law.

Claims 1 and 2 of patent 1,803,262 are limited to a combination of elements not employed in any engine manufactured, used or sold by defendant and neither of said claims has been infringed by defendant.

Claims 1, 2 and 6 of patent 1,954,082 are limited to a combination of elements not employed in any engine manufactured, used or sold by defendant and none of said claims has been infringed by defendant.

Defendant is entitled to judgment in its favor, including costs.

### Opinion.

█ Plaintiffs are the owners of United States patents 1,803,262 and 1,954,082. Plaintiffs, in their complaint, allege infringement by defendant of both of these patents and ask for an accounting and injunctive relief. Defendant, by its answer, created the issues of validity and infringement of said patents. This court, in the foregoing findings, has found the issue of infringement of both of said patents in favor of the defendant. It is, therefore, not necessary or proper to pass upon the question of validity of the said patents. Electrical Fittings Corp. et al. v. Thomas & Betts Co. et al., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263; American Can Co. v. M. J. B. Co., 3 Cir., 59 F.2d 77. The facts are fully stated in the foregoing findings of fact.

Franz Lang, on March 11, 1926, made application for a patent for an improvement in what he designated a "self-igniting oil motor." Patent 1,803,262 was granted April 28, 1931. This patent states: "This invention relates to self-igniting motors in which the chamber wherein the air is compressed by the piston on its compression-stroke is subdivided into at least two chambers which communicate by at least one aperture having a throttling cross-sectional area. One of the chambers at least is arranged to be reduced in size or volume as the compression proceeds so as to force a flow of compressed air into the other chamber or chambers through a throttling constriction of the aperture or communication. According to the invention the parts are so arranged and constructed that fuel injected into the chamber before the end of the compression-stroke in a direction toward, or practically toward, the constriction meets such air-flow in a funnel-shaped space tapering toward and arranged in advance of the constriction. More specifically, under this invention at least a portion of the walls of the compartment with fixed volume is arranged in a fixed relation to the cylinder of the motor and the compression is increased to such a degree, that the charge of mixed fuel and air, even at the normal starting of the cold engine, is ignited without requiring any auxiliary igniting device."

The construction of the engine described in said patent is as follows:

"In all seven modifications the cylinder is indicated by the reference character Z, the piston by a or a' respectively, the two compartments of the compression chamber by b and d and the fuel nozzle arranged on the cylinder by c. The two compartments b and d are connected with each other at least during the last part of the compression stroke by a throttling constriction f, which preferably is formed as short as possible.

"As shown, the fuel-nozzle c is arranged outside of and separate from the compartment b, which compartment is entirely imperforate, access thereto being only through the constriction f.

"The transit from the chamber d to the throttling constriction f is formed by a

funnel-shaped.mixing passage g, which latter materially assists in the ignition and combustion, as experience has shown. This funnel-shaped passage or mixing chamber, as shown, lies between the fuel-injector-nozzle c and the throttling constriction f and tapers from the nozzle c to the constriction f, the nozzle being at the widest portion of the funnel-shaped passage or chamber."

The operation of said engine is described in this patent as follows: "The operation of the engine according to Fig. 1 is as follows: The air entering into the cylinder during the suction stroke is compressed during the next stroke, whereby a brisk flow of air through the throttling constriction f into the supplemental compartment b arranged on the cylinder is produced. The fuel nozzle c has the same longitudinal axis as said constriction, so that at least a portion of the fuel is injected into the core of the air current. This fuel injected through the nozzle towards the end of the compression stroke contacts already in the mixing funnel g, that means before the constriction f, with the air flowing into the compartment b and being heated and ignited on account of the compression, the compressed air stored in said compartment b flowing through the constriction into contact with the mixture to support and maintain the combustion as the piston recedes."

Plaintiffs rely on claims 1 and 2. Claim 1 reads: "1. In an oil-motor for self-ignition comprising a cylinder and a piston cooperating to form a compartment arranged to be reduced in volume by the piston, said cylinder being provided with a second compartment of fixed dimensions communicating with the first compartment by a passage tapering from the first compartment toward the second compartment and a throttling constriction between the tapering passage and the second compartment, in combination with a fuel-injector arranged in advance of the tapering passage to inject fuel into and toward the same substantially at the end of the compression-stroke of the piston, said piston being arranged to compress the air in said compartments so highly as to ignite by the heat of compression fuel injected into said highly compressed air."

Claim 2 is the same as claim 1, except it is stated in claim 2, as to the fuel-injector, that its "axis coincides with the axis of the tapering passage."

There is no proof that any engine was ever built by plaintiffs, or their licensees, under either of the two patents in suit. Such being the case, the rule laid down in Elvin Mechanical Stoker Co. v. Locomotive Stoker Co., 3 Cir., 286 F. 309, 311 applies. In that case it was stated: "* * * The Pennsylvania Railroad, which has a shop right to manufacture it, has made but one, and there is no proof that the plaintiff company, which now owns the patent, or the patentee, have ever manufactured any, although the device is some 14 years old; the patent having been applied for in 1908. Such being the fact, we are justified in holding that Gee will receive all the patent protection to which he is entitled by confining his claims to the particular structure he disclosed, and to the mechanical equivalents of its parts, and declining to construe his claims in any broad way to cover other devices whose commercial success in the art lies, not in the fact that they adopted his disclosures, but that they departed from them."

See, also, Roberts v. General Electric Co., 3 Cir., 85 F.2d 964, 965; Standard Oil Development Co. v. James B. Berry Sons Co., Inc., 3 Cir., 92 F.2d 386, 387, 388; General Chemical Co. v. Selden Co., D. C., 60 F.2d 144, 150.

Patents 1,803,262 and 1,954,082 are for certain improvements in the compression-ignition class of internal combustion engines. "Diesel" or "full Diesel" means an engine of the compression-ignition class. Compression ignition is distinctive in its ignition of fuel by contact with air the temperature of which has been increased to above the ignition temperature of the fuel by compression by movement of the engine piston; readiness to ignite the fuel permeates the entire mass of air thus compressed, and the ignition of the fuel is thus directly dependent upon its injection into that mass; and fuel injection is directly related to engine crankshaft position.

The main combustion chamber d and the auxiliary combustion chamber b in patent 1,803,262 are old in the art. They are fully disclosed in White patent 170,433; also, the passage between the two chambers. The combination of elements in this patent is old. The only novel feature of the engine disclosed therein is the specific form of the mixing and combustion chamber g referred to in the claims as "a passage tapering from the first compartment toward the second compartment."

The accused engine of defendant was made in accordance with the drawings of Ramsey patent 2,067,461, applied for September 24, 1936 and granted January 12, 1937. Defendant's engine has a main combustion chamber and an auxiliary combustion chamber. Its engine does not embody any element which corresponds with the tapering mixing and combustion chamber g (of patent 1,803,262) either in form or function. Defendant's engine, therefore, does not infringe claims 1 and 2 of patent 1,803,262.

■ Plaintiff's second patent in suit, 1,954,082, was applied for January 22, 1932 and was granted April 10, 1934. It is designated as a "Diesel engine with air and pressure reservoir." The patent states that the invention "relates to Diesel engines, and more particularly to engines having an air storage chamber or reservoir." The object of the invention is stated in the patent as follows:

"It is the object of my invention to improve the performance of an engine of this type.

"To this end, in combination with a main combustion chamber connected to the cylinder of the engine, an air storage chamber at one side, and a fuel injection nozzle at the other side of the main combustion chamber, I provide a baffle between the main combustion chamber and the cylinder, which baffle extends toward the nozzle and across part of the main combustion chamber.

"The improvement achieved by this arrangement is due to the fact that, during the charging of the air storage chamber and the injection of fuel, the air expelled from the cylinder and forced into the air storage chamber through the main combustion chamber and the fuel flow in the same direction, while during the discharge of air from the air storage chamber and the continued fuel injection, the air and the fuel flow in opposite directions."

The construction of the engine, as described in the patent, is as follows:

"Referring now to the drawings, a is the cylinder, b is the piston, c is the cylinder head, d is the main combustion chamber, e is the fuel injection nozzle, and f is the air storage chamber. The main combustion chamber d is of smaller volume than the cylinder a so that it is disposed inwardly at the cylinder and away from a portion of the wall thereof. The fuel nozzle e, the chamber d and the air storage chamber f are preferably arranged with a common axis or centre line which extends at right angles, or substantially so, to the axis of the cylinder a.

"Preferably the main combustion chamber d serves also as a valve chamber. In the example illustrated in Figs. 1 to 6, the inlet valve k is seated in the top plate of the main combustion chamber d, and the outlet valve 1 has a chamber of its own, while in the example illustrated in Figs. 7 to 9 the inlet and outlet valves k and 1 are seated in the top plate of the chamber.

"Referring now to Figs. 1 to 6, g is the baffle referred to, which extends from the side where the reservoir f is connected to the chamber d, toward the side of the nozzle e, leaving open a slot h between the cylinder a and the chamber d. The baffle g is preferably arranged at right angles to the axis of the cylinder a and its edge, which may be sharpened so as to be inclined downward and inward of the cylinder as shown in Fig. 1, is inclined to the line connecting the reservoir f and the nozzle e, as shown in Fig. 2. The main combustion chamber d, as also shown in Fig. 2, is preferably arranged eccentrically to the axis of the cylinder a, adjacent one side thereof, and slot h is disposed so that the air and fuel mixture issuing from the combustion chamber is projected into the cylinder substantially tangentially thereof and is given a whirling movement in the cylinder, as indicated by the arrows in Fig. 6."

The operation of the engine, as described in said patent, is as follows:

"In operation, the inlet valve k is opened during the suction stroke of the piston b and fresh air is drawn into the main combustion chamber d. When the piston b moves inwardly on the compression stroke as shown in Fig. 3, the air flows from the cylinder a to the chamber f through the slot h and the combustion chamber d in the direction indicated by the arrows in Fig. 3. Since slot h is adjacent one side of the cylinder, air flowing to this slot from the cylinder travels substantially circumferentially of the cylinder, which imparts to the air in the cylinder a desirable whirling motion or rotary turbulence, as indicated in Fig. 4. During this period the injection from the nozzle e occurs and the ejected fuel flows in the same direction as the air, it being noted that the air flowing to air storage chamber f flows along the path of fuel injection so as to entrain

the fuel and facilitate entry thereof into chamber f. On the expansion stroke of piston b the air and fuel mixture, previously stored in chamber f under high pressure, is discharged into the combustion chamber d at high velocity and in the opposite direction to the jet of fuel which still issues from the nozzle e, Fig. 5.

"The described flows of the air and fuel mixture and the injected fuel assure intimate mixing of the air and fuel, while producing high turbulence of the fuel mixture in the cylinder resulting in increased smoothness and efficiency in operation of the engine."

Plaintiffs rely on claims 1, 2 and 6 of this patent. Claim 1 reads: "In combination in an injection engine, a cylinder and a piston operating therein, a combustion chamber overlying and opening into the cylinder, an air storage chamber opening into the combustion chamber at one side thereof and otherwise closed to the cylinder, an injection nozzle opening into the combustion chamber at the opposite side thereof, and a baffle between the combustion chamber and the cylinder and substantially normal to the cylinder axis, said baffle extending from one side of the combustion chamber and terminating short of the other side thereof and defining with the latter a restricted opening between said combustion chamber and the cylinder."

Claim 2 is the same as claim 1, with the exception stated therein, "the combustion chamber having an air inlet passage opening through its roof, an overhead valve controlling said passage."

Claim 6 reads: "In combination in an injection engine, a cylinder and a piston operating therein, a combustion chamber overlying and opening into the cylinder, an air storage chamber opening into the combustion chamber at one side thereof, and an injection nozzle opening into the combustion chamber at the opposite side thereof, the opening between the combustion chamber and the cylinder being disposed to discharge fuel mixture from the combustion chamber into the cylinder substantially tangentially of the latter."

There is no rotary movement of the gases in the cylinder space of defendant's engine. There are no elements in defendant's engine which correspond in form or function to the baffle g or to the slot or opening h of patent 1,954,082. Defendant's engine does not infringe claim 6 of the patent because it contains no "opening" between the combustion chamber and the cylinder "disposed to discharge fuel mixture from the combustion chamber into the cylinder substantially tangentially of the latter," as called for by claim 6, nor any mechanical equivalent thereof. Defendant's engine contains no "air storage chamber opening into the combustion chamber," as called for by each of the claims in suit, but does contain an auxiliary combustion chamber opening into the main combustion chamber which is wholly different in function from the air storage chamber of patent 1,954,082. I conclude, therefore, that defendant's engine does not infringe claims 1, 2 and 6 of patent 1,954,082.

Let an order for judgment be prepared in accordance with the foregoing findings of fact, conclusions of law and this opinion